The Honorable Robert J. Bryan

## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF WASHINGTON
## AT TACOMA

BUILDING INDUSTRY
ASSOCIATION OF WASHINGTON;
AIR AMERICAN INC.; AIREFCO INC.;
BOA CONSTRUCTION CO.,
COMPLETE DESIGN INC.; CVH INC.;
ENTEK CORP.; SADLER
CONSTRUCTION INC.; TRACY
CONSTRUCTION CO.,

                Plaintiff,

    v.

WASHINGTON STATE BUILDING
CODE COUNCIL,

                Defendant,

NW ENERGY COALITION, SIERRA
CLUB, WASHINGTON
ENVIRONMENTAL COUNCIL, and
NATURAL RESOURCES DEFENSE
COUNCIL,

            Defendant/Intervenors.

NO.  3:10-CV-05373-RJB

STATE DEFENDANT AND
DEFENDANT-INTERVENORS'
JOINT MOTION FOR SUMMARY
JUDGMENT

NOTE ON MOTION CALENDAR:
FRIDAY, DECEMBER 10, 2010

ORAL ARGUMENT
REQUESTED

**TABLE OF CONTENTS**

I.    INTRODUCTON .................................................................................................. 1

II.   FACTUAL BACKGROUND .............................................................................. 4

      A.   Building Energy Codes Generate Significant Energy, Environmental, and
           Economic Benefits.............................................................................................. 4

           1.   Buildings are Responsible for the Single Largest Share of Total U.S.
                Energy Use ..................................................................................................... 4

           2.   Building Energy Codes Produce Multiple Significant Benefits......................... 5

      B.   Congress, the Department of Energy, and the States Have Recognized the
           Substantial Benefits of Building Energy Codes ......................................................... 6

      C.   Washington's Building Energy Code Achieves Energy Savings While Giving
           Builders Substantial Compliance Flexibility ............................................................ 7

           1.   Washington's Building Code Council is Required to Promulgate Building
                Energy Codes that Achieve a 70 Percent Reduction in Energy
                Consumption by 2031 .......................................................................................... 7

           2.   Washington's 2009 Building Energy Code Offers Builders Many Options
                to Achieve a 15 Percent Overall Reduction in Energy Efficiency
                Compared to the 2006 Code................................................................................. 8

                a.   Washington's Building Energy Codes in General...................................... 9

                b.   Washington's 2009 Building Energy Code ............................................. 10

                c.   The 2009 Building Energy Code Offers Builders a Choice of Three
                     Baseline Compliance Pathways in Chapters 4, 5, and 6 .......................... 13

                d.   In Chapter 9 the 2009 Building Energy Code Offers Builders
                     Options.................................................................................................... 15

III.  LEGAL BACKGROUND................................................................................... 21

IV.   ARGUMENT ...................................................................................................... 24

      A.   Legal Standards.................................................................................................... 24

           1.   Summary Judgment............................................................................................ 24

           2.   Preemption ....................................................................................................... 25

           3.   To Prove Chapter 9 is Facially Unconstitutional, the BIAW Must
                Establish That no Circumstances Exist under Which Chapter 9 Would be
                Valid .............................................................................................................. 26

STATE DEFENDANT AND                                          i          ATTORNEY GENERAL OF WASHINGTON
DEFENDANT-INTERVENORS' JOINT                                            Government Operations Division
MOTION FOR SUMMARY JUDGMENT                                             7141 Cleanwater Drive SW
-- NO.  3:10-CV-05373-RJB                                               PO Box 40108
                                                                       Olympia, WA 98504-0108
                                                                       (360) 586-3636

B.   EPCA Does Not Preempt Chapter 9 of Washington's Building Energy Code ....... 27

C.   Chapter 9 of Washington's Building Energy Code Meets EPCA's Seven Factor Preemption Exception.................................................................................. 29

    1.   Factor One: The Washington Code Offers Builders Numerous Options to Meet the Code's Overall 15 percent Energy Efficiency Requirement and Eight Percent Energy Efficiency Requirement in Chapter 9 and the BIAW Does Not Allege Otherwise .................................................................... 29

    2.   Factor Two: The Washington Code Does Not Expressly or Effectively Require Efficiency Levels Beyond the Federal Minimum Standards.............. 31

    3.   Factor Three: The Washington Code Assigns Credits That Are Even-Handed and Not Unfairly Weighted................................................................. 33

    4.   Factor Four: The Washington Code Does Not Require the Use of a Single Baseline Building Design and the BIAW Does Not Allege Otherwise .......... 36

    5.   Factor Five: The Code Offers an Evenly Balanced Range of Options ............ 37

    6.   Factor Six: The Energy Savings Goal of the Washington Code is Measured in Energy Use .............................................................................. 38

    7.   Factor Seven: The Code Uses Federal Test Procedures to Measure Energy Use ...................................................................................................... 39

D.   Congress Intended To Exempt Performance-Based Building Codes From Preemption Under EPCA.................................................................................... 40

V.   CONCLUSION ............................................................................................................ 43

STATE DEFENDANT AND
DEFENDANT-INTERVENORS' JOINT
MOTION FOR SUMMARY JUDGMENT
-- NO.  3:10-CV-05373-RJB

ii

ATTORNEY GENERAL OF WASHINGTON
Government Operations Division
7141 Cleanwater Drive SW
PO Box 40108
Olympia, WA 98504-0108
(360) 586-3636

## TABLE OF AUTHORITIES

### Cases

Air Conditioning and Refrigeration Inst. v. Energy Res. Conserv. & Dev.,
410 F.3d 492 (9th Cir. 2005) ........................................................................ 21, 40

Air Conditioning, Heating & Refrigeration Inst. v. Albuquerque,
No. 08-633 MV/RLP, slip op. at 9 (D.N.M. Sept. 30, 2010) ..................... 41, 42, 43

Altria Group, Inc. v. Good,
129 S. Ct. 538 (2008) .................................................................................... 25, 26

Anderson v. Edwards,
514 U.S. 143 (1995) ............................................................................................ 26

Broadrick v. Oklahoma,
413 U.S. 601 (1973) ............................................................................................ 26

California Coastal Comm'n v. Granite Rock Co.,
480 U.S. 572 (1987) ............................................................................................ 26

Celotex Corp. v. Catrett,
477 U.S. 317 (1986) ............................................................................................ 24

Chevron U.S.A., Inc. v. Hammond,
726 F.2d 483 (9th Cir. 1984) ............................................................................. 26

Cipollone v. Liggett Group, Inc.,
505 U.S. 504 (1992) ............................................................................................ 25

English v. General Elec. Co.,
496 U.S. 72 (1990) .............................................................................................. 25

Kleenwell Biohazard Waste & Gen. Ecology Consultants v. Nelson,
48 F.3d 391, 395 (9th Cir. 1995) ......................................................................... 4

Medtronic, Inc. v. Lohr,
518 U.S. 470 (1996) ...................................................................................... 25, 40

Metropolitan Taxicab Bd. of Trade v. City of New York
615 F.3d 152 (2d Cir. 2010) ............................................................................... 28

Natural Res. Defense Council v. Abraham,
355 F.3d 179, 184-87 (2d Cir. 2004) ............................................................. 21, 22

Pike v. Bruce Church,
397 U.S. 137 (1970) .............................................................................................. 4

STATE DEFENDANT AND
DEFENDANT-INTERVENORS' JOINT
MOTION FOR SUMMARY JUDGMENT
-- NO.  3:10-CV-05373-RJB

iii

ATTORNEY GENERAL OF WASHINGTON
Government Operations Division
7141 Cleanwater Drive SW
PO Box 40108
Olympia, WA 98504-0108
(360) 586-3636

Rapanos v. United States,
   547 U.S. 715 (2006)......................................................................................... 26

Sprint Telephony PCS, L.P. v. Cy. of San Diego,
   543 F.3d 571 (9th Cir. 2008) ........................................................................... 27

United States v. Salerno,
   481 U.S. 739 (1987)..................................................................................... 26, 27

VP Racing Fuels, Inc. v. Gen. Petroleum Corp.,
   673 F. Supp. 2d 1073 (E.D. Cal. 2009) ........................................................... 26

**Statutes**

42 U.S.C. § 6201.............................................................................................. 21

42 U.S.C. §§ 6201-6422……………………………………………………… 3

42 U.S.C. §§ 6291-6309 .................................................................................. 22

42 U.S.C. § 6291(24) ....................................................................................... 17

42 U.S.C. § 6292 ......................................................................................... 3, 22

42 U.S.C. § 6293 .............................................................................................. 39

42 U.S.C. § 6295 ................................................................................................ 3

42 U.S.C. § 6295(e) .................................................................................... 16, 17

42 U.S.C. § 6295(f)(1) ..................................................................................... 16

42 U.S.C. § 6295(j) .......................................................................................... 16

42 U.S.C. § 6297 ......................................................................................... 22, 25

42 U.S.C. § 6297(c) ...................................................................................... 3, 28

42 U.S.C. § 6297(f)(3) .............................................................................. passim

42 U.S.C. § 6297(f)(3)(A) ......................................................................... 29, 31

42 U.S.C. § 6297(f)(3)(A)-(G) ........................................................................ 28

42 U.S.C. § 6297(f)(3)(B) .................................................................. 23, 31, 33

42 U.S.C. § 6297(f)(3)(C) .......................................................................... 34, 36

42 U.S.C. § 6297(f)(3)(D) ............................................................................... 36

42 U.S.C. § 6297(f)(3)(D) – (E) ...................................................................... 31

STATE DEFENDANT AND
DEFENDANT-INTERVENORS' JOINT
MOTION FOR SUMMARY JUDGMENT
-- NO.  3:10-CV-05373-RJB

iv

ATTORNEY GENERAL OF WASHINGTON
Government Operations Division
7141 Cleanwater Drive SW
PO Box 40108
Olympia, WA 98504-0108
(360) 586-3636

42 U.S.C. § 6297(f)(3)(E) .................................................................. 24, 31, 37, 38

42 U.S.C. § 6297(f)(3)(F) .................................................................. 38, 39

42 U.S.C. § 6297(f)(3)(G) .................................................................. 39

42 U.S.C. § 6833(a)(5)(B) .................................................................. 6

42 U.S.C. § 6833(e) .................................................................. 6

American Recovery and Reinvestment Act of 2009,
Pub. L. No. 111–5, §§ 410 (a) (2)(A)-(B), 123 Stat. 115, 147 (2009) .................. 6

Energy Policy Conservation Act,
Pub. L. 94-163, 89 Stat. 871 (1975) .................................................... 3, 6

EPCS § 6297(f) .................................................................. 27

H. Rep. No. 100-11, (March 3, 1987) .................................................... passim

H.R. Rep. No. 94-340, (1975),
    reprinted in 1975 U.S.C.A.A.N. 1762 .................................................... 21

Pacific N.W. Electric Power Planning and Conservation Act of 1980,
    Pub. L. No. 96-501 .................................................................. 19

Pub. L. No. 100-12 (Mar. 17, 1987) .................................................... 10

S. Rep. No 100-6, (1987),
    reprinted in 1987 U.S.C.A.A.N. 52, 55 .................................................... passim

S. Rep. No. 100-6, (1987),
    reprinted in 1987 U.S.C.A.A.N 52, 60-61 .................................................... 23, 24, 29

S. Rep. No. 94-516, (1975) .................................................................. 21

Wash. Rev. Code § 19.27.031 .................................................................. 7

Wash. Rev. Code § 19.27.070 .................................................................. 7

Wash. Rev. Code § 19.27.074 .................................................................. 7

Wash. Rev. Code § 19.27A.020 .................................................................. 7

Wash. Rev. Code § 19.27A.020(2) .................................................................. 8

Wash. Rev. Code § 19.27A.020(3) .................................................................. 20

Wash. Rev. Code § 19.27A.045 .................................................................. 7

Wash. Rev. Code § 19.27A.130 .................................................................. 2

STATE DEFENDANT AND
DEFENDANT-INTERVENORS' JOINT
MOTION FOR SUMMARY JUDGMENT
-- NO.  3:10-CV-05373-RJB

v

ATTORNEY GENERAL OF WASHINGTON
Government Operations Division
7141 Cleanwater Drive SW
PO Box 40108
Olympia, WA 98504-0108
(360) 586-3636

Wash. Rev. Code § 19.27A.160 ................................................................... 2, 8

Wash. Rev. Code § 19.27A.160(1) ................................................................... 11

**Other Authorities**

EPA, *Clean Energy–Environment Guide to Action, Policies, Best Practices, and Action Steps for States 4-37 (2006)*, (Nov. 5, 2010), http://www.epa.gov/statelocalclimate/documents/pdf/guide_action_full.pdf ........................ 6

*Explanatory Statement on Section 410, Recovery Act Community Stakeholders,* SW Energy Efficiency Project Website, (Nov. 18, 2009), http://www.swenergy.org/policy /arra/ Section_410_Information_Statement -2009-11-16.pdf ................................................................................................. 7

*Online Code Environment and Advocacy Network, Code Status: Residential,* (Oct. 19, 2010) http://bcap-ocean.org/code-status-residential ................................................. 7

U.S. Dep't of Energy *Bldg. Energy Codes Program,* (Oct. 19, 2010) http://www.energycodes.gov/about/ ...................... 6

U.S. Dep't of Energy, *Obama Administration Launches New Energy Efficiency Efforts* (June 29, 2009), http://www.energy.gov/news/archives/7550.htm. .......................... 2

U.S. Dep't of Energy, *Why Building Energy Codes?* (Nov, 4, 2010), http://www.energycodes.gov /why_codes/ ............................................................ 5

**Rules**

Fed. R. Civ. P. 56(c) ................................................................................. 24

Fed. R. Civ. P. 8 ......................................................................................... 4

**Regulations**

10 C.F.R. § 430.32(e) ................................................................................ 10

2006 Code § 502.1.4 ................................................................................. 11

2006 Code § 502.1.5 ................................................................................. 11

2006 Code § 502.1.6 ................................................................................. 11

2006 Code § 502.4 ................................................................................... 11

2006 Code § 503 ....................................................................................... 11

2006 Code § 503.4 ................................................................................... 11

2006 Code § 504 ....................................................................................... 11

STATE DEFENDANT AND
DEFENDANT-INTERVENORS' JOINT
MOTION FOR SUMMARY JUDGMENT
-- NO.  3:10-CV-05373-RJB

vi

ATTORNEY GENERAL OF WASHINGTON
Government Operations Division
7141 Cleanwater Drive SW
PO Box 40108
Olympia, WA 98504-0108
(360) 586-3636

2006 Code § 504.2.1 ................................................................. 11

2006 Code § 505 ..................................................................... 11

2009 Code § 109 ..................................................................... 28

2009 Code § 201 ..................................................................... 16

2009 Code § 402.1.1 ................................................................ 13

2009 Code § 402.2 ................................................................... 13

2009 Code § 502.1 ................................................................ 13, 15

2009 Code § 502.2 ................................................................... 13

2009 Code § 503.4 ............................................................... 10, 39

2009 Code § 504.2.1 ................................................................. 39

2009 Code § 601.1 ................................................................... 14

2009 Code § 901 ............................................................. 15, 30, 35

2009 Code § 901 Table 9-1 ..................................................... 10, 32

Wash. Admin. Code 51-11, (2009) ................................................. 3

STATE DEFENDANT AND
DEFENDANT-INTERVENORS' JOINT
MOTION FOR SUMMARY JUDGMENT
-- NO.  3:10-CV-05373-RJB

vii

ATTORNEY GENERAL OF WASHINGTON
Government Operations Division
7141 Cleanwater Drive SW
PO Box 40108
Olympia, WA 98504-0108
(360) 586-3636

1
2
3
4
5
6
7

The Honorable Robert J. Bryan

8

**UNITED STATES DISTRICT COURT**
9
**WESTERN DISTRICT OF WASHINGTON**
**AT TACOMA**
10

| | |
|---|---|
| BUILDING INDUSTRY ASSOCIATION OF WASHINGTON; AIR AMERICAN INC.; AIREFCO INC.; BOA CONSTRUCTION CO., COMPLETE DESIGN INC.; CVH INC.; ENTEK CORP.; SADLER CONSTRUCTION INC.; TRACY CONSTRUCTION CO., | NO. 3:10-CV-05373-RJB |

11
12
13
14

NO. 3:10-CV-05373-RJB

STATE DEFENDANT AND DEFENDANT-INTERVENORS' JOINT MOTION FOR SUMMARY JUDGMENT

NOTE ON MOTION CALENDAR: FRIDAY, DECEMBER 10, 2010

15
Plaintiff,

ORAL ARGUMENT REQUESTED
16
v.

17
WASHINGTON STATE BUILDING
CODE COUNCIL,
18

19
Defendant,

NW ENERGY COALITION, SIERRA
20
CLUB, WASHINGTON
ENVIRONMENTAL COUNCIL, and
21
NATURAL RESOURCES DEFENSE
COUNCIL,
22

Defendant/Intervenors.
23

24
**I.     INTRODUCTON**

25
    This case presents a narrow legal question – whether a Washington state regulation on

26
residential building energy usage is expressly preempted by a federal statute intended to

STATE DEFENDANT AND
DEFENDANT-INTERVENORS' JOINT
MOTION FOR SUMMARY JUDGMENT
-- NO. 3:10-CV-05373-RJB

1

ATTORNEY GENERAL OF WASHINGTON
Government Operations Division
7141 Cleanwater Drive SW
PO Box 40108
Olympia, WA 98504-0108
(360) 586-3636

increase energy efficiency that carves out an exemption from preemption for building energy codes such as Washington's. Plaintiffs concede that this issue is primarily legal, and that there is no need for further factual development. Doc. 1 (Complaint) ¶ 29 (May 25, 2010).

This legal issue arises in the broader context of the global issues of energy production, energy consumption, and climate change. Energy production and energy use are fast becoming the primary environmental and economic issues of our time: our nation's increasing energy use and longstanding fossil-fuel dependence are driving profound changes in our climate, burdening our citizens with high energy bills, and threatening our national security.

Buildings are responsible for the largest share of our nation's energy use, and as the Washington legislature has found, "energy efficiency is the cheapest, quickest and cleanest way to meet rising energy needs, confront climate change, and boost our economy." Wash. Rev. Code § 19.27A.130. And as U.S. Energy Secretary Steven Chu has noted, "energy efficiency isn't just low hanging fruit; it's fruit lying on the ground." See U.S. Dep't of Energy, *Obama Administration Launches New Energy Efficiency Efforts* (June 29, 2009), http://www.energy.gov/news/archives/7550.htm.

Increasing energy efficiency requirements in building codes is one of the best ways to reduce nationwide energy use. To foster increased energy efficiency in buildings, the Washington legislature has mandated that by 2031, the State's building energy code (one of Washington's building codes) must achieve a 70 percent reduction in annual net energy consumption, compared to a baseline set by the previous building energy code in 2006. Wash. Rev. Code § 19.27A.160. To reach that goal, building energy code revisions must incrementally increase energy efficiency requirements. In preparation for this mandate, the

STATE DEFENDANT AND
DEFENDANT-INTERVENORS' JOINT
MOTION FOR SUMMARY JUDGMENT
-- NO. 3:10-CV-05373-RJB

2

ATTORNEY GENERAL OF WASHINGTON
Government Operations Division
7141 Cleanwater Drive SW
PO Box 40108
Olympia, WA 98504-0108
(360) 586-3636

defendant Washington State Building Code Council reviewed and updated the State's residential building energy code in 2009 and required additional savings of 15 percent; half of which are included in Chapter 9, which allows builders of new homes to meet the savings target in a number of different ways.  Wash. Admin. Code 51-11 (2009) (hereinafter "2009 Code").[1]

Plaintiffs Building Industry Association of Washington et al. ("BIAW") have challenged Chapter 9, alleging that it is preempted by the federal requirements found in the Energy Policy and Conservation Act ("EPCA").  EPCA embodies Congress' command to reduce the wasteful use of our nation's energy resources.  See EPCA, Pub. L. 94-163, 89 Stat. 871 (1975) (codified as amended at 42 U.S.C. §§ 6201-6422).  EPCA, as amended, establishes nationwide minimum standards for the energy efficiency of certain major residential and commercial appliances and equipment, including heating, ventilating, and air conditioning ("HVAC") products and water heaters.  See 42 U.S.C. §§ 6292 and 6295.

BIAW asks the Court to strike down Washington's regulation in its entirety, including the portion of the regulation that contains no reference to HVAC products or water heaters covered by EPCA.   But while EPCA, as amended, contains a preemption provision that prohibits state regulation "concerning" the energy efficiency, energy use, or water use of any product covered by the federal standards, see 42 U.S.C. § 6297(c), EPCA also expressly provides an *exception to federal preemption* where the state regulation is in a building code for new construction and seven particular conditions are met.   See 42 U.S.C. § 6297(f)(3).

---

[1] See Declaration of Tim Nogler, (Nov. 3, 2010), Attachment A and B.  For the Court's ease of reference Att. A and B to Mr. Nogler's declaration contain the entire text of the 2006 and 2009 versions of the Washington state energy code.  Att. A is Wash. Admin. Code 51-11, (2006) (hereinafter "2006 Code"), Att. B is Wash. Admin. Code 51-11, (2009) (hereinafter "2009 Code").

STATE DEFENDANT AND DEFENDANT-INTERVENORS' JOINT MOTION FOR SUMMARY JUDGMENT -- NO.  3:10-CV-05373-RJB

3

ATTORNEY GENERAL OF WASHINGTON
Government Operations Division
7141 Cleanwater Drive SW
PO Box 40108
Olympia, WA 98504-0108
(360) 586-3636

Washington's building energy code falls squarely within this exemption and is therefore not preempted by EPCA.[2]

Despite the national and global importance of the questions of energy policy, energy efficiency, and climate change that surround this case, there is only one narrow legal issue before the Court: Does Washington's 2009 building energy code meet EPCA's seven-part test for exemption from preemption?  The Court can and should answer that legal question through this motion for summary judgment and answer it "yes."  Because Washington's building energy code, clearly fits within the terms of the explicit Congressional exemption from preemption, and BIAW's challenge to Chapter 9 should be rejected.

## II.   FACTUAL BACKGROUND

**A.   Building Energy Codes Generate Significant Energy, Environmental, and Economic Benefits**

### 1.   Buildings are Responsible for the Single Largest Share of Total U.S. Energy Use

Buildings are responsible for the single largest share of the United States' total energy use today; the U.S. Department of Energy has reported that residential and commercial buildings together account for almost 40 percent of total national energy use and 70 percent of electricity use, more than either the industrial or transportation sectors.  U.S. Dep't of Energy

---

[2] This summary judgment motion is based solely on BIAW's Supremacy Clause challenge to Chapter 9. In its Doc. 1 (Complaint), BIAW makes passing references to the Commerce Clause, U.S. Const. art. I, § 8, cl. 3, but does not include (1) facts sufficient to state a Commerce Clause claim for relief, (2) a Commerce Clause claim for relief, or (3) a Commerce Clause request for relief.  If BIAW intended to bring a Commerce Clause claim, its pleadings are insufficient under Fed. R. Civ. P. 8.  Even if BIAW adequately raised a Commerce Clause claim, which it has not, Chapter 9 does not directly or practically discriminate against out-of-state interests, and its incidental burdens to interstate commerce, if any, are outweighed by the local benefits provided to Washington consumers and the environment.  See Pike v. Bruce Church, 397 U.S. 137, 142 (1970); Kleenwell Biohazard Waste & Gen. Ecology Consultants v. Nelson, 48 F.3d 391, 395 (9th Cir. 1995)  BIAW has not satisfied its burden of establishing that the burdens of the code outweigh the benefits, see Kleenwell, 48 F.3d at 398, as it cannot produce any evidence of a discriminatory impact, nor show a burden on commerce that is disproportionate to the local benefits.

STATE DEFENDANT AND
DEFENDANT-INTERVENORS' JOINT
MOTION FOR SUMMARY JUDGMENT
-- NO.  3:10-CV-05373-RJB

4

ATTORNEY GENERAL OF WASHINGTON
Government Operations Division
7141 Cleanwater Drive SW
PO Box 40108
Olympia, WA 98504-0108
(360) 586-3636

(DOE), *Why Building Energy Codes?* (Nov, 4, 2010), http://www.energycodes.gov.why_codes/ (hereinafter "DOE, Why Codes?). State building energy codes are one of the most important tools to reduce building energy use for two reasons. First, it is far easier and more cost-effective to design a new building to be more energy-efficient than it is to retrofit an existing building to use less energy. See id. ("New buildings . . . represent a unique chance to effect energy efficiency . . . . Once a new building is constructed, it is very expensive and often impossible to achieve the energy efficiency that can be economically built in at the time of construction."). Second, increasing efficiency in new buildings provides long-term returns because buildings are constructed to last for decades, and efficient construction will reduce energy use throughout the lifetime of the building. Id.

### 2. Building Energy Codes Produce Multiple Significant Benefits

Reducing building energy use can lead to substantial national energy savings. DOE, Why Codes? (state adoption of modern energy codes "could save about 330 Trillion BTU by 2030, almost 2 percent of total current residential energy consumption"). Energy savings from energy-efficient buildings, in turn, provide a variety of benefits in the areas of energy, the environment and the economy. Reducing fossil fuel combustion substantially reduces the emission of greenhouse gases and other pollutants that pose significant risks to human health and the environment, such as particulate matter and mercury. DOE, Why Codes? Energy-efficient buildings also create energy bill savings for consumers and businesses throughout the lifetime of the building. Indeed, the U.S. Environmental Protection Agency has estimated that if all states adopted and enforced model energy codes, by 2020 "annual consumer energy bill savings would be almost $7 billion, and the construction of 32 new 400 megawatt (MW) power

STATE DEFENDANT AND
DEFENDANT-INTERVENORS' JOINT
MOTION FOR SUMMARY JUDGMENT
-- NO.  3:10-CV-05373-RJB

5

ATTORNEY GENERAL OF WASHINGTON
Government Operations Division
7141 Cleanwater Drive SW
PO Box 40108
Olympia, WA 98504-0108
(360) 586-3636

1    plants could be avoided."   EPA, *Clean Energy–Environment Guide to Action, Policies, Best*

2    *Practices, and Action Steps for States 4-37 (2006)*, (Nov. 5, 2010), http://www.epa.gov/

3    statelocalclimate/documents/pdf/guide_action_full.pdf

4    **B.     Congress, the Department of Energy, and the States Have Recognized the**
           **Substantial Benefits of Building Energy Codes**

5

6         Recognizing these substantial benefits from strong state building energy codes,

7    Congress and the Department of Energy have taken steps to encourage and support states'

8    adoption of strong energy codes.  EPCA requires that each time the international model energy

9    code known as the International Energy Conservation Code ("IECC") is revised and the

10   Department of Energy determines that the revision will improve energy efficiency in

11   residential buildings, each state must review its residential building energy code and determine

12

13   whether to revise it to meet *or exceed* the IECC energy efficiency standards.  See 42 U.S.C. §

14   6833(a)(5)(B) (emphasis added).   Section 304(e) of EPCA also provides incentive funding

15   from the Department of Energy to states and local governments that achieve and document at

16   least a 90 percent rate of compliance with the international standards.  Id. § 6833(e).

17

18        More recently, Congress authorized grants to state and local governments that

19   implement strong energy codes, see American Recovery and Reinvestment Act of 2009, Pub.

20   L. No. 111–5, §§ 410(a)(2)(A)-(B), 123 Stat. 115, 147 (2009) ("ARRA").   Moreover, the

21   Department of Energy provides information, support, and guidance for states to develop

22   stronger building energy codes, ranging from the development of free software and tools to

23   support state building energy codes to providing on-demand training and technical assistance,

24   see U.S. Dep't of Energy *Bldg. Energy Codes Program*, http://www.energycodes.gov/about/

25   (last visited Oct. 19, 2010).

26

STATE DEFENDANT AND                          6            ATTORNEY GENERAL OF WASHINGTON
DEFENDANT-INTERVENORS' JOINT                                  Government Operations Division
MOTION FOR SUMMARY JUDGMENT                                     7141 Cleanwater Drive SW
-- NO.  3:10-CV-05373-RJB                                            PO Box 40108
                                                                Olympia, WA 98504-0108
                                                                    (360) 586-3636

As a result of these mandates and incentives, 40 states have already adopted residential energy codes.  *Online Code Environment and Advocacy Network, Code Status: Residential*, (Oct. 19, 2010) http://bcap-ocean.org/code-status-residential (40 states have adopted residential building energy codes that meet the 1998-2003 IECC or equivalent, with the majority adopting an energy code that meets 2006 or 2009 IECC or equivalent).  All 50 states have agreed to adopt energy efficiency codes that meet or exceed IECC standards.  *Explanatory Statement on Section 410, Recovery Act Community Stakeholders,* SW Energy Efficiency Project Website, (Nov. 18, 2009), http://www.swenergy.org/policy /arra/ Section_410_Information_Statement - 2009-11-16.pdf (governors of all 50 states have accepted funding under the American Recovery and Reinvestment Act, and as a condition thereof, agreed to adopt energy efficiency codes that meet or exceed the 2009 IECC).

**C.      Washington's Building Energy Code Achieves Energy Savings While Giving Builders Substantial Compliance Flexibility**

**1.      Washington's Building Code Council is Required to Promulgate Building Energy Codes that Achieve a 70 Percent Reduction in Energy Consumption by 2031**

Washington, like most other states, has adopted a building energy code to reduce the State's energy use and achieve the numerous benefits of such energy reduction.  Washington's building codes, including the building energy code, are promulgated by the Building Code Council, a group with members representing a broad range of stakeholder interests.  See Wash. Rev. Code §§ 19.27.031; 19.27.070; 19.27.074; 19.27A.020.  Washington's building energy code must be reviewed and updated by the Council every three years.  Wash. Rev. Code § 19.27A.045.

STATE DEFENDANT AND
DEFENDANT-INTERVENORS' JOINT
MOTION FOR SUMMARY JUDGMENT
-- NO.  3:10-CV-05373-RJB

7

ATTORNEY GENERAL OF WASHINGTON
Government Operations Division
7141 Cleanwater Drive SW
PO Box 40108
Olympia, WA 98504-0108
(360) 586-3636

Each building energy code that the Building Code Council adopts must: (1) lead to the construction of increasingly energy efficient homes and buildings that help achieve the broader goal of building zero fossil-fuel greenhouse gas emission homes and buildings and achieve a 70 percent reduction in annual net energy consumption by 2031; (2) require new buildings to meet designated levels of energy efficiency, but allow flexibility in building design, construction, and heating equipment efficiencies; and (3) allow space heating equipment efficiency to offset or substitute for building envelope thermal performance.[3]   Wash. Rev. Code §§ 19.27A.020(2), 19.27A.160.   The building energy code must also make incremental progress toward the 70 percent reduction target in each building energy code revision cycle between 2013 and 2031. Wash. Rev. Code § 19.27A.160.

2.   **Washington's 2009 Building Energy Code Offers Builders Many Options to Achieve a 15 Percent Overall Reduction in Energy Efficiency Compared to the 2006 Code**

Washington's building energy code contains different chapters applicable to commercial and residential buildings,[4] but only the chapters containing requirements for residential buildings are relevant to this case and only one – Chapter 9 of the 2009 Code – is challenged by BIAW.   However, because Chapter 9 functions interactively with the other chapters of the residential building energy code, consideration of Chapter 9 requires a wider discussion, including of Washington's 2006 and 2009 building energy codes, the structure and relationship of the two codes, the means by which they achieve energy efficiency, and the

---

[3]   Generally speaking, this requirement means that using higher efficiency heaters inside the house can reduce the required robustness of the building's exterior walls, ceilings, floors, windows, doors (the building's "envelope").   Declaration of Thomas Eckman (Nov. 5, 2010) at ¶ 9.

[4]   Chapters 1 – 10 apply to single-family residential buildings.   Chapters 11 – 15 apply to commercial and multi-family buildings.   Chapters 2 (definitions), 7 (standards), and 10 (default U-factors) are shared.   2009 Code.

STATE DEFENDANT AND
DEFENDANT-INTERVENORS' JOINT
MOTION FOR SUMMARY JUDGMENT
-- NO.  3:10-CV-05373-RJB

8

ATTORNEY GENERAL OF WASHINGTON
Government Operations Division
7141 Cleanwater Drive SW
PO Box 40108
Olympia, WA 98504-0108
(360) 586-3636

various compliance choices in the 2009 code.   Copies of both codes are attached to the Declaration of Tim Nogler (Nov. 3, 2010).

a.     **Washington's Building Energy Codes in General**

There are three major factors that determine how much energy a home uses: "1) the efficiency of the *building's envelope* (exterior walls, ceiling, floors, windows, doors and 'air tightness'); 2) the efficiency of the *system* used to heat and cool the building; and 3) the efficiency of *other energy consuming devices* in the home."  Declaration of Thomas Eckman (Nov. 5, 2010). at ¶ 9.  The building's envelope plays an important role in determining how much energy a home uses because the more the envelope (walls, windows, etc.) is insulated and the less air escapes to the outside, the better the house retains heat in winter and cool air in summer—and the less the house's heating or cooling systems needs to be used to keep the house warm or cool.  Id. at ¶ 9(a).  The system used to heat and cool the building – for example, the furnace or heat pump – plays an important role in the building's energy use as well because a more efficient heating or cooling system will use less energy to get the home to the same target temperature.  Id. at ¶ 9(b).  Finally, the efficiency of other energy consuming devices can also reduce the home's energy use – for example, an efficient hot water heater will require less energy to heat a given amount of water, and low-flow faucets will reduce the total amount of hot water used.  Id. at ¶ 9(c).

Both Washington's 2006 and 2009 building energy codes address all three of these major energy use factors – building envelope, heating and cooling systems, and other devices – by requiring a reduction in energy use in numerous elements of a building's design and construction, including materials, roofs, walls, attics, windows, electric lighting, plumbing,

STATE DEFENDANT AND
DEFENDANT-INTERVENORS' JOINT
MOTION FOR SUMMARY JUDGMENT
-- NO.  3:10-CV-05373-RJB

9

ATTORNEY GENERAL OF WASHINGTON
Government Operations Division
7141 Cleanwater Drive SW
PO Box 40108
Olympia, WA 98504-0108
(360) 586-3636

heating, ventilation, air conditioning, and water heating. Id. at ¶ 10. Some of these requirements for reduction in energy use are prescriptive – meaning that the code prescribes a minimum efficiency level for certain specified components that builders must meet. Id. at ¶11. A requirement that all gas furnaces have a minimum efficiency rating of 78 percent is a prescriptive requirement. See 2009 Code § 503.4 ("All heating equipment shall meet the requirements of the National Appliance Energy Conservation Act (NAECA)[5] and be so labeled."). Compare 10 C.F.R. § 430.32(e). (NAECA sets the federal standard for gas furnaces at 78 percent AFUE).

Other portions of Washington's building energy code are performance-based – meaning that the code requires that the building achieve an overall target level – such as a target of energy use – and the builder may comply by trading off the efficiency of different components of the building to meet that goal. Declaration of Thomas Eckman (Nov. 5, 2010) at ¶ 12. For example, requiring that buildings achieve an 8 percent reduction in total energy use *and* allowing builders to meet that goal by either improving the efficiency of the home's furnace or improving the insulation of the walls is a performance-based requirement. See 2009 Code § 901 Table 9-1; Declaration of Thomas Eckman (Nov. 5, 2010) at ¶ 12; see generally 5 Bruner & O'Connor, *Construction Law,* § 16.2 at n. 22 (2010) (explaining the difference between prescriptive and performance-based codes).

b.    **Washington's 2009 Building Energy Code**

Washington law requires that the Building Code Council achieve its 70 percent reduction in energy consumption by 2031 as measured against the 2006 building energy code.

---

[5]    The National Energy Appliance Energy Conservation Act ("NAECA") amended EPCA and set efficiency standards for certain EPCA-covered appliances. Pub. L. No. 100-12 (Mar. 17, 1987).

STATE DEFENDANT AND
DEFENDANT-INTERVENORS' JOINT
MOTION FOR SUMMARY JUDGMENT
-- NO. 3:10-CV-05373-RJB

10

ATTORNEY GENERAL OF WASHINGTON
Government Operations Division
7141 Cleanwater Drive SW
PO Box 40108
Olympia, WA 98504-0108
(360) 586-3636

Wash. Rev. Code § 19.27A.160(1).   Washington's 2009 building energy code, including

Chapter 9, which makes the first incremental step in that direction, can only be understood in

the context of, Washington's 2006 building energy code.

Compliance under Washington's 2006 building energy code entailed a two-step

process.  First, the builder considered what were largely performance-based general installation

requirements for insulation, moisture control, air leakage control; mechanical systems

including duct sealing, water heating, and lighting.   See 2006 Code Chapter 5, §§ 502.1.4,

502.1.5, 502.1.6, 502.4, 503, 504, 505.   Second, the builder chose one of three different

compliance pathways: a systems analysis performance pathway in Chapter 4; a building

envelope tradeoff performance pathway in Chapter 5; and a prescriptive requirements pathway

in Chapter 6.  Declaration of Tim Nogler (Nov. 3, 2010) at ¶ 9-11.

In the 2006 building energy code, none of the requirements were more stringent than

the federal minimum standards under EPCA.  Id. at ¶ 12.  Also see, e.g., 2006 Code § 503.4

("All heating equipment shall meet the requirements of the National Appliance Energy

Conservation Act (NAECA) and be so labeled."), and 2006 Code § 504.2.1 ("All storage water

heaters shall meet the requirements of the National Appliance Energy Conservation Act and be

so labeled.").

The Building Code Council built on the general structure of the 2006 building energy

code and its two-step structure in crafting the 2009 building energy code.[6]  Declaration of

Tim Nogler (Nov. 3, 2010) at ¶ 13.  Builders still must comply with the general installation

---

[6]  The 2009 building energy code was adopted by the Building Code Council on November 20, 2009
with a July 1, 2010 effective date.  Declaration of Tim Nogler (Nov. 3, 2010) at ¶ 4.  The Council subsequently
extended the effective date to January 1, 2011.  Declaration of Tim Nogler (Nov. 3, 2010) at ¶ 4.  In other words,
as of the date of this motion, the 2009 building energy code is not in effect and will not go into effect until
January 1, 2011.

STATE DEFENDANT AND
DEFENDANT-INTERVENORS' JOINT
MOTION FOR SUMMARY JUDGMENT
-- NO.  3:10-CV-05373-RJB

11

ATTORNEY GENERAL OF WASHINGTON
Government Operations Division
7141 Cleanwater Drive SW
PO Box 40108
Olympia, WA 98504-0108
(360) 586-3636

requirements in Chapter 5, and then must choose among the same three pathways: the systems analysis performance pathway in Chapter 4; the building envelope tradeoff performance pathway in Chapter 5; and the prescriptive requirements pathway in Chapter 6.

In the 2009 building energy code, the Council made two pertinent modifications to the 2006 code.[7] Id. at ¶ 15.  First, the Council modified the pathways in Chapters 4, 5, and 6 (while maintaining the same general structure) to reduce energy usage by approximately seven percent over the 2006 Code. Id. at ¶ 16.  As was true of the 2006 code, Chapters 4, 5, and 6 continue to contain no standards more stringent than the federal minimum standards under EPCA. Id.  The changes to Chapters 4, 5, and 6 are not being challenged by the BIAW.  Doc. 1 (Complaint) ¶ 30.

Second, the Council added Chapter 9, providing a menu of options to achieve an additional approximately eight percent energy savings[8] on top of the seven percent savings achieved through the modifications to Chapters 4, 5, and 6.  Declaration of Tim Nogler (Nov. 3, 2010) at ¶ 17.  The eight percent savings achieved in Chapter 9, combined with the seven percent savings achieved in Chapters 4, 5, and 6, brought the total energy savings achieved by the 2009 code to 15 percent over the 2006 baseline.  Declaration of Tim Nogler (Nov. 3, 2010) at ¶ 18.  As is described below, four of the 13 options for compliance with Chapter 9 include

---

[7] The Council also made other changes to the building energy code.  Declaration of Tim Nogler (Nov. 3, 2010) at ¶15.  BIAW is not challenging those changes.  Doc. 1 (Complaint) ¶ 29.

[8] Chapter 9 was based upon a proposal from the Washington Department of Commerce Energy Policy Division, as refined by the work of the Council's energy technical advisory group.  The technical advisory group consisted of members representing affected industries (including BIAW), environmental groups, and local governments.  Declaration of Tim Nogler, (Nov. 3, 2010) at ¶ 5.  Based on the technical advisory group's extensive discussions and negotiations with stakeholder groups, and in response to an earlier motion by BIAW's representative, the Council reduced the energy savings required in Chapter 9 from 24 percent as originally proposed by the Department of Commerce to the 8 percent ultimately included in the rule.  Id. at ¶ 6.  BIAW's representative stated *"I would make a motion to reduce the points and that motion would be to reduce it to one point let it run as a trial for the code cycle and let building officials get their arms around it and let builders get their arms around it"*.  Id. at ¶ 7.

STATE DEFENDANT AND
DEFENDANT-INTERVENORS' JOINT
MOTION FOR SUMMARY JUDGMENT
-- NO.  3:10-CV-05373-RJB

12

ATTORNEY GENERAL OF WASHINGTON
Government Operations Division
7141 Cleanwater Drive SW
PO Box 40108
Olympia, WA 98504-0108
(360) 586-3636

1   use of high efficiency equipment exceeding the federal minimum standards under EPCA, but

2   use of these options is not required.

3       c.   **The 2009 Building Energy Code Offers Builders a Choice of Three
             Baseline Compliance Pathways in Chapters 4, 5, and 6**
4

5        As shown in Diagram 1 below, the 2009 building energy code continues to give

6   builders a choice of three baseline compliance pathways: a systems analysis performance

7   pathway in Chapter 4, an envelope component tradeoff performance pathway in Chapter 5, and

8   a prescriptive requirements pathway in Chapter 6. Under each pathway, the builder must also

9   comply with the 8 percent savings requirement of Chapter 9.
10

11       In the Chapter 4 performance-based systems analysis performance pathway, builders

12  use a computer simulation or alternative calculation procedure to demonstrate that the

13  anticipated annual energy use of a proposed design uses less energy than a code-defined target

14  home. See 2009 Code §§ 402.1.1 ("Proposed buildings" shall use "no more energy from non-

15  renewable sources . . . than a standard building . . . designed in accordance with § 502.2 of this

16  Code"), 402.2 ("Compliance with this chapter will require . . . an annual energy analysis");

17  Declaration of Thomas Eckman (Nov. 5, 2010) at ¶ 13a. Under Chapter 4, builders may trade
18
    off the energy efficiency of *any* of the building components – the building's envelope, the
19
    heating and cooling systems, and other energy consuming devices – so long as the target
20

21  energy use goal is met. Id. at ¶ 13a.

22       In the Chapter 5 envelope component performance tradeoff pathway, builders are
23
    allowed to trade off the thermal efficiency of building envelope components so heat loss is less
24
    than or equal to target values. See 2009 Code §§ 502.1, 502.2; Declaration of Thomas Eckman
25
26  at ¶ 13b. Builders may, however, only trade off the efficiency of components of the building's

STATE DEFENDANT AND
DEFENDANT-INTERVENORS' JOINT
MOTION FOR SUMMARY JUDGMENT
-- NO. 3:10-CV-05373-RJB

13

ATTORNEY GENERAL OF WASHINGTON
Government Operations Division
7141 Cleanwater Drive SW
PO Box 40108
Olympia, WA 98504-0108
(360) 586-3636

1   envelope – for example, increased attic insulation may be traded off against a reduction in wall

2   insulation – but may not trade off the efficiencies of the heating and cooling systems or other

3   energy consuming devices.  Declaration of Thomas Eckman at ¶ 13b.

4
5       In the Chapter 6 prescriptive requirements pathway, builders must simply meet

6   minimum set levels for each listed component or system, including each component of the

7   building's envelope, the heating and cooling systems, and other energy consuming devices.

8   See 2009 Code § 601.1; Declaration of Thomas Eckman at ¶ 13c.

9                                      DIAGRAM 1



24      Each pathway achieves approximately a 15% overall reduction in energy use
         compared to the 2006 code.

STATE DEFENDANT AND                          14          ATTORNEY GENERAL OF WASHINGTON
DEFENDANT-INTERVENORS' JOINT                            Government Operations Division
MOTION FOR SUMMARY JUDGMENT                             7141 Cleanwater Drive SW
-- NO.  3:10-CV-05373-RJB                               PO Box 40108
                                                        Olympia, WA 98504-0108
                                                        (360) 586-3636

####     d.     In Chapter 9 the 2009 Building Energy Code Offers Builders Options

As described above, the Building Code Council added Chapter 9 to the 2009 building energy code to achieve an additional eight percent energy savings on top of the approximately seven percent savings achieved through compliance with the baseline Chapters 4, 5, and 6 pathways.   Chapter 9 implements this eight percent requirement through two different approaches tailored to the choice made by the builder among Chapters 4, 5, and 6.  As shown on Diagram 1, for builders who use the Chapter 4 systems analysis pathway, Chapter 9's eight percent energy savings is built into the Chapter 4 systems analysis, which requires that proposed buildings use eight percent less energy than the code-specified target building.  See 2009 Code §§ 901 and 402.2; Declaration of Thomas Eckman at ¶ 14a-b.

In contrast, for builders who choose either the Chapter 5 envelope component tradeoff performance pathway or the Chapter 6 prescriptive requirements pathway, Chapter 9 allows builders to pick from a menu of energy efficient building design options – ranging from improving the efficiency of the home's furnace to improving the insulation of the walls and ceiling – to achieve the required eight percent energy efficiency by selecting an option or combination of options that total "1 credit".  See 2009 Code § 901 and Table 9-1; Declaration of Thomas Eckman at ¶ 13c.  For the Court's ease of reference, Table 9-1 is reproduced below.

In Table 9-1, builders may select from a list of 13 options (1a, 1b, 1c, 2, 3a, 3b, 3c, 4a, 4b, 5a, 5b, 6, and 8).[9]

---

[9] The number/letter combination assigned to each option (e.g. "1a" or "3c") indicates the general category of building construction into which each individual option falls:  Options 1a through 1c and option 2 address the efficiency of the home's heating and cooling systems, including both the efficiency of the equipment used to convert gas or electricity into heat (options 1a-1c) and the efficiency of the mechanism used to distribute that heat around the home (option 2).  Options 3a through 3c address the efficiency of the building's envelope

STATE DEFENDANT AND
DEFENDANT-INTERVENORS' JOINT
MOTION FOR SUMMARY JUDGMENT
-- NO.  3:10-CV-05373-RJB

15

ATTORNEY GENERAL OF WASHINGTON
Government Operations Division
7141 Cleanwater Drive SW
PO Box 40108
Olympia, WA 98504-0108
(360) 586-3636

1    Many of the 13 individual options offer multiple sub-options.  For example, option 1a

2  offers a choice between a furnace or boiler with an AFUE of 92 percent[10] *or* an air-source heat

3  pump with a minimum HSPF of 8.5.[11]  Moreover, the choice in option 1a of a furnace or boiler

4  with an AFUE of 92 percent offers a further choice between gas, propane or oil fuel types.  As

5  a result, although this motion discusses Table 9-1 as containing 13 options, it would be equally

6  valid to describe Table 9-1 as containing significantly more than 13 options.

7

8    Of these 13 options (and multiple sub-options), only four options offer the builder a

9  choice to use products that exceed EPCA standards: option 1a, a portion of option 2, option 5a,

10  and option 5b.   42 U.S.C. § 6295(f)(1);  42 U.S.C. § 6295(e) (water heaters);  42 U.S.C. §

11  6295(j) (shower heads and faucets); Declaration of Thomas Eckman at ¶ 16.  The options or

12  portions of options that allow the use of equipment exceeding EPCA standards are shown as

13  shaded in Table 9-1.

14

15                                    TABLE 9-1

16

| Option | Description | Credit(s) |
|---|---|---|
| 1a | HIGH EFFICIENCY HVAC EQUIPMENT 1: Gas, propane or oil-fired furnace or boiler with minimum AFUE of 92 ercent, or Air-source heat pump with minimum HSPF of 8.5. | 1.0 |

19

20

_____

based on the levels of insulation in the walls, ceiling and floors and reductions in heat loss through the use of high performance windows. Options 4a and 4b limit how much heated air "leaks" out of the home. Options 5a and 5b address the efficiency of the other major energy consuming devices in the home, specifically devices which impact the energy used for heating water or which impact the amount of hot water consumed. Option 6 assigns credits based on home size; smaller houses have less surface area than larger houses and therefore use less energy. Option 7, which assigns a 1 credit *deduction* for large dwelling units exceeding 5000 square feet does not count as an option for complying with the 1 credit requirement. The underlying rationale for including Option 7 in Table 9-1 is that even with identical levels of insulation, a larger house will expose more area to heat loss resulting in additional energy use for heating and cooling. Option 8 assigns credit for on-site renewable energy generation. Declaration of Thomas Eckman at ¶15.

[10] AFUE means Annual Fuel Utilization Efficiency, 2009 Code § 201.
[11] HSPF means Heating Seasonal Performance Factor, 2009 Code § 201.

ATTORNEY GENERAL OF WASHINGTON
Government Operations Division
7141 Cleanwater Drive SW
PO Box 40108
Olympia, WA 98504-0108
(360) 586-3636

| | | |
|---|---|---|
| 1b[12] | HIGH EFFICIENCY HVAC EQUIPMENT 2: Closed-loop ground source heat pump; with a minimum COP of 3.3. | 2.0 |
| 1c | HIGH EFFICIENCY HVAC EQUIPMENT 3: DUCTLESS SPLIT SYSTEM HEAT PUMPS, ZONAL CONTROL: In home where the primary space heating system is zonal electric heating, a ductless heat pump system shall be installed and provide heating to at least one zone of the housing unit. | 1.0 |
| 2 | HIGH EFFICIENCY HVAC DISTRIBUTION SYSTEM:[1] All heating and cooling system components installed inside the conditioned space. All combustion equipment shall be direct vent or sealed combustion. Locating system components in conditioned crawl spaces is not permitted under this option. Electric resistance heat is not permitted under this option. Direct combustion heating equipment with AFUE less than 80% is not permitted under this option. | 1.0 |
| 3a | EFFICIENT BUILDING ENVELOPE 1: Prescriptive compliance is based on Table 6-1, Option III with the following modifications: Window U = 0.28 floor R-38, slab on grade R-10 full, below grade slab R-10 full. or Component performance compliance: Reduce the Target UA from Table 5-1 by 5%, as determined using EQUATION 1.[1] | 0.5 |
| 3b | EFFICIENT BUILDING ENVELOPE 2: Prescriptive compliance is based on Table 6-1, Option III with the following modifications: Window U = 0.25 and wall R-21 plus R-4 and R-38 floor, slab on grade R-10 full, below grade slab R-10 full, and R-21 plus R-5 below grade basement walls. or Component performance compliance: Reduce the Target UA from Table 5.1 by 15%, as determined using EQUATION 1.[1] | 1.0 |
| 3c | SUPER-EFFICIENT BUILDING ENVELOPE 3: Prescriptive compliance is based on Table 6-1, Option III with the following modifications: Window U = 0.22 and wall R-21 plus R-12 and R-38 floor, slab on grade R-10 full, below grade slab R-10 full and R-21 plus R-12 below grade basement walls and R-49 advanced ceiling and vault. or Component performance compliance: Reduce the Target UA from Table 5.1 by 30%, as determined using EQUATION 1.[1] | 2.0 |
| 4a | AIR LEAKAGE CONTROL AND EFFICIENT VENTILATION: Envelope leakage reduced to SLA of 0.00020 building envelope tightness shall be considered acceptable when tested air leakage is less than specific leakage area of 0.00020 when tested with a blower door at a pressure difference of 50 PA. Testing shall occur after rough in and after installation of penetrations of the building envelope, including penetrations for utilities, plumbing, electrical, ventilation, and combustion appliances. and All whole house ventilation requirements as determined by Section M1508 of the Washington State Residential Code shall be met with a heat recovery ventilation system in accordance with Section M1508.7 of that Code. | 0.5 |
| 4b | ADDITIONAL AIR LEAKAGE CONTROL AND EFFICIENT VENTILATION: Envelope leakage reduced to SLA of 0.00015 building envelope tightness shall be considered acceptable when tested air leakage is less than specific leakage area of 0.00015 when tested with a blower door at a pressure difference of 50 PA. Testing shall occur after | 1.0 |

---

[12] See 42 U.S.C. § 6295(e) sets standards for heat pumps; ground source heat pumps are not included in standard as defined in 42 U.S.C. § 6291(24).

STATE DEFENDANT AND
DEFENDANT-INTERVENORS' JOINT
MOTION FOR SUMMARY JUDGMENT
-- NO. 3:10-CV-05373-RJB

17

ATTORNEY GENERAL OF WASHINGTON
Government Operations Division
7141 Cleanwater Drive SW
PO Box 40108
Olympia, WA 98504-0108
(360) 586-3636

| | | rough in and after installation of penetrations of the building envelope, including penetrations for utilities, plumbing, electrical, ventilation, and combustion appliances. **and** All whole house ventilation requirements as determined by Section M1508 of the Washington State Residential Code shall be met with a heat recovery ventilation system in accordance with Section M1508.7 of that Code. | |
|---|---|---|---|
| 5a | EFFICIENT WATER HEATING:[1]  Water heating system shall include one of the following: Gas, propane or oil water heater with a minimum EF of 0.62. or Electric Water Heater with a minimum EF of 0.93. and for both cases All showerhead and kitchen sink faucets installed in the house shall meet be rated at 1.75 GPM or less. All other lavatory faucets shall be rated at 1.0 GPM or less.[2] | **0.5** |
| 5b | HIGH EFFICIENCY WATER HEATING:[1] Water heating system shall include one of the following: Gas, propane or oil water heater with a minimum EF of 0.82. or Solar water heating supplementing a minimum standard water heater. Solar water heating will provide a rated minimum savings of 85 therms or 2000 kWh based on the Solar Rating and Certification Corporation (SRCC) Annual Performance of OG-300 Certified Solar Water Heating Systems. or Electric heat pump water heater with a minimum EF of 2.0. | 1.5 |
| 6 | SMALL DWELLING UNIT 1:[1] Dwelling units less than 1500 square feet in floor area with less than 300 square feet of window + door area. Additions to existing building that are less than 750 square feet of heated floor area. | 1.0 |
| 7 | LARGE DWELLING UNIT 1:[1] Dwelling units exceeding 5000 square feet of floor area shall be assessed a deduction for purposes of complying with Section 901 of this Code. | -1.0 |
| 8.0 | RENEWABLE ELECTRIC ENERGY: For each 1200 kWh of electrical generation provided annually by on-site wind or solar equipment a 0.5 credit shall be allowed, up to 3 credits. Generation shall be calculated as follows: For solar electric systems, the design shall be demonstrated to meet this requirement using the National Renewable Energy Laboratory calculator PVWATTs. Documentation noting solar access shall be included on the plans. For wind generation projects designs shall document annual power generation based on the following factors: The wind turbine power curve; average annual wind speed at the site; frequency distribution of the wind speed at the site and height of the tower. | 0.5 |

STATE DEFENDANT AND
DEFENDANT-INTERVENORS' JOINT
MOTION FOR SUMMARY JUDGMENT
-- NO.  3:10-CV-05373-RJB

18

ATTORNEY GENERAL OF WASHINGTON
Government Operations Division
7141 Cleanwater Drive SW
PO Box 40108
Olympia, WA 98504-0108
(360) 586-3636

After identifying and categorizing the 13 options in Table 9-1, the table assigns each option a credit value varying between .50 to 2.0 credits depending on the energy savings each achieves. Declaration of Thomas Eckman at ¶ 15. The credits in Table 9-1, and the underlying energy savings that each credit represents, are based on models of the energy savings that would result from the use of each option in four different prototype homes in two different climate zones. See Id. at ¶ 17. Such prototype modeling as a basis for statewide regulation is based on approaches developed and used for years by entities such as the Northwest Power and Conservation Council[13] and the Northwest Energy Efficiency Alliance.[14] See Id. at ¶ 17a. Prototype modeling is the appropriate and necessary methodology for creating building code energy efficiency requirements because the input assumptions are "calibrated" to actual measured building energy, the computer modeling uses typical (aka, "prototypical") home designs as the basis for determining energy savings, and it is not practical to build homes with every potential combination of energy efficiency measures being considered for code adoption in order to test their effect on energy use. See Id. at ¶ 17. Statewide regulatory requirements cannot take into account every variation that affects the energy savings each option will achieve for every individual home in Washington. See Id. at ¶ 17c. For example, the State of Washington cannot reasonably regulate energy consumption based on variations in energy usage arising from how many residents live in each home or how much hot water each resident chooses to use. However, modeling does calculate the energy savings achieved by each option

---

[13] Congress created the Northwest Power and Conservation Council to develop 20-year electric power plans, protect fish and wildlife impacted by hydropower development, and promulgate model conservation standards for new residential and commercial buildings in a region consisting of Washington, Oregon, Idaho, and Montana. See Pacific Northwest Electric Power Planning and Conservation Act of 1980, Pub. L. No. 96-501.

[14] The Northwest Energy Efficiency Alliance is a non-profit organization supported by, and working in collaboration with the Bonneville Power Administration, Energy Trust of Oregon and more than 100 Northwest utilities on behalf of more than 12 million energy consumers.

STATE DEFENDANT AND
DEFENDANT-INTERVENORS' JOINT
MOTION FOR SUMMARY JUDGMENT
-- NO. 3:10-CV-05373-RJB

19

ATTORNEY GENERAL OF WASHINGTON
Government Operations Division
7141 Cleanwater Drive SW
PO Box 40108
Olympia, WA 98504-0108
(360) 586-3636

across homes of several of the more typical and representative home sizes and designs in Washington – small, medium, and large single-family homes, some with a single story and some with multiple stories. See Id. at ¶ 17c. The modeling also calculates the energy savings achieved by each option for each of these different prototypes in two different climate zones: one in Spokane's colder climate, and one in Seattle's milder climate, as required by Washington law. Wash. Rev. Code § 19.27A.020(3).[15]

For builders who have chosen Chapter 5 or 6 as their baseline (because they do not want to do the computer-modeling required under the Chapter 4 pathway), Table 9-1 provides a concise list of pre-approved options that meet Chapter 9's eight percent objective. Declaration of Thomas Eckman at ¶ 18 . No other regulatory choice is reasonably possible to meet the need of builders who do not want to do their own eight percent savings calculations. Id. at ¶ 18.

The materials and equipment for each of the options in Table 9-1 are readily available, and builders in Washington are already building homes that would satisfy the criteria in these options. Id. at ¶ 19; Declaration of Martha Rose, Oct. 21, 2010 at ¶¶ 21, 24 ("The Fish Singer Place homes would have received several credits from Chapter 9 that is required by the new Washington Energy Code." "In my experience, the equipment discussed in the code is available and affordable, and has been for many years."); Declaration of Paul Huff, Oct. 25, 2010 at ¶ 10 ("Based on my extensive experience with building and contracting, it is my opinion that each of the compliance pathways in Chapter 9 of the 2009 Washington State Energy Code is readily available to builders."). Declaration of Gary Nordeen, Oct. 26, 2010)

---

[15] "The Washington state energy code shall take into account regional climatic conditions. Climate zone 1 shall include all counties not included in climate zone 2. Climate zone 2 includes: Adams, Chelan, Douglas, Ferry, Grant, Kittitas, Lincoln, Okanogan, Pend Oreille, Spokane, Stevens, and Whitman counties."

STATE DEFENDANT AND
DEFENDANT-INTERVENORS' JOINT
MOTION FOR SUMMARY JUDGMENT
-- NO.  3:10-CV-05373-RJB

20

ATTORNEY GENERAL OF WASHINGTON
Government Operations Division
7141 Cleanwater Drive SW
PO Box 40108
Olympia, WA 98504-0108
(360) 586-3636

at ¶¶ 7-13, 14.  ("In sum, builders will be able to comply with Chapter 9 of Washington's new energy code using products that are currently commercially available in Washington State and are already being used by builders in Washington State, with a minimal impact on the overall cost of construction.").

### III.    LEGAL BACKGROUND

Following the 1970s oil embargo and subsequent energy crisis, Congress passed EPCA, the nation's first "comprehensive national energy policy."  See H.R. Rep. No. 94-340, at 20 (1975), reprinted in 1975 U.S.C.A.A.N. 1762, 1782; see generally, Air Conditioning and Refrigeration Inst. v. Energy Res. Conserv. & Dev., 410 F.3d 492, 498-99 (9th Cir. 2005) ("AHRI"); Natural Res. Defense Council v. Abraham, 355 F.3d 179, 184-87 (2d Cir. 2004) Increasing energy efficiency and decreasing domestic energy consumption are explicitly listed as core purposes of the Act.  See 42 U.S.C. § 6201 (EPCA's purposes include conserving energy and water supplies and improving the energy efficiency of "major appliances" and other consumer products).  As the Ninth Circuit has found, "'EPCA was designed, in part, to reduce the United States' 'domestic energy consumption through the operation of specific voluntary and mandatory energy conservation programs.'"  AHRI, 410 F.3d at 498-99 (quoting S. Rep. No. 94-516, at 117 (1975)).

Since EPCA's initial enactment in 1975, Congress has amended EPCA five times, each time strengthening its energy efficiency requirements by setting standards for new categories of appliances or replacing voluntary programs with mandatory one.  Relevant here, EPCA, as subsequently amended, establishes a program for nationwide standards for the energy efficiency and energy use of major residential, commercial, and industrial appliances and

STATE DEFENDANT AND
DEFENDANT-INTERVENORS' JOINT
MOTION FOR SUMMARY JUDGMENT
-- NO.  3:10-CV-05373-RJB

21

ATTORNEY GENERAL OF WASHINGTON
Government Operations Division
7141 Cleanwater Drive SW
PO Box 40108
Olympia, WA 98504-0108
(360) 586-3636

1  equipment.  See 42 U.S.C. §§ 6291-6309.  It is only EPCA's provisions concerning the energy

2  efficiency of residential appliances that are at issue in this case.

3      Residential appliances are regulated as "consumer products" under EPCA.  See 42

4  U.S.C. §§ 6291, 6292.  EPCA itself establishes energy efficiency standards for certain

5

6  consumer products, and requires DOE to review and update the standards for those products

7  periodically.  Id. §§ 6292, 6295.  "Covered products," or consumer products for which an

8  efficiency standard has been established under the Act, include refrigerators, central air

9  conditioners and heat pumps, hot water heaters, dishwashers, kitchen ranges and ovens, pool

10  heaters, and showerheads, among others.  Id. §§ 6292 (listing covered products), 6291

11  (defining "covered product").

12      EPCA contains a carefully crafted preemption provision that generally – but not always

13
14  – prevents states from enacting energy efficiency standards for any covered product, and also

15  includes a number of exemptions from preemption.  Id. § 6297.  Along with other exemptions

16  not relevant to this case, EPCA explicitly exempts from preemption state regulations

17  "concerning" the energy efficiency of covered products if the state regulation is part of a

18  building code for new residential construction, and the building code meets a specific seven-

19  part test.  Id. § 6297(f)(3).  It is this seven-part test, described in detail below that governs this

20
21  case.

22      EPCA's exemption to preemption for state building codes was enacted as part of

23  National Appliance Energy Conservation Act of 1987 ("NAECA").  See S. Rep. No 100-6, at 1

24  (1987), reprinted in 1987 U.S.C.A.A.N. 52, 55; see also Abraham, 355 F.3d at 187.  The

25  legislative history of the building code exemption makes clear that Congress anticipated and

26

STATE DEFENDANT AND
DEFENDANT-INTERVENORS' JOINT
MOTION FOR SUMMARY JUDGMENT
-- NO.  3:10-CV-05373-RJB

22

ATTORNEY GENERAL OF WASHINGTON
Government Operations Division
7141 Cleanwater Drive SW
PO Box 40108
Olympia, WA 98504-0108
(360) 586-3636

1    intended that states should have considerable latitude to include more efficient equipment in

2    state building energy codes so long as such equipment was not required.  See S. Rep. No. 100-

3    6, at 10 (1987), reprinted in 1987 U.S.C.A.A.N 52, 60-61 ("allow[ing] a State flexibility to

4    implement performance-based codes. These codes authorize builders to adjust or trade off the

5    efficiencies of the various building components so long as an energy objective is met"); see 42

6    U.S.C. § 6297(f)(3)(B).   Congress was well aware that residential buildings account for

7    approximately one quarter of the nation's total energy consumption.  See H. Rep. No. 100-11,

8    at 18 (residential buildings account for 23 percent of total U.S. energy consumption).

9    Congress explicitly recognized that state building codes are an important means of reducing

10   residential building energy use, and that states have a strong interest in using such codes to

11   manage energy resources.  See H. Rep. No. 100-11, at 24 (the building code exemption

12   "recognize[s] the increasingly important role of these codes in a State's management of energy

13   resources"); see H. Rep. No. 100-11, at 25 (the building code exemption is "warranted because

14   of the significant growth of State building codes as a tool for State energy management since

15   the 1978 amendments to EPCA"); see also H. Rep. No. 100-11, at 24 (recognizing significant

16   state interest in building codes).  Moreover, Congress explicitly recognized that state building

17   codes "typically regulate the energy efficiency of central heating and cooling equipment and

18   water heaters," which are covered products under EPCA.  See S. Rep. No. 100-6, at 9.   In

19   recognition of this important state interest and traditional state role, Congress chose to create

20   an explicit exemption from preemption for certain state building codes in EPCA.

21        The seven factors that building energy codes must meet to fit within the preemption

22   exception were intended to be "limited restrictions" to ensure that state codes do not

STATE DEFENDANT AND                              23              ATTORNEY GENERAL OF WASHINGTON
DEFENDANT-INTERVENORS' JOINT                                        Government Operations Division
MOTION FOR SUMMARY JUDGMENT                                              7141 Cleanwater Drive SW
-- NO.  3:10-CV-05373-RJB                                                       PO Box 40108
                                                                             Olympia, WA 98504-0108
                                                                                (360) 586-3636

"effectively require the installation of covered products whose efficiencies exceed" federal minimum standards.  See H. Rep. No. 100-11, at 26; see also S. Rep. No. 100-6, at 10. Accordingly, the factors require that the code offer builders a sufficient range of options that do not rely on covered products, 42 U.S.C. § 6297(f)(3)(E), and that the credits assigned to various measures are based on the energy use each saves, to assure that the options "are not unfairly weighted resulting in undue pressure on builders to install covered products exceeding Federal standards," see S. Rep. No. 100-6, at 10.  Where a state code meets these limited requirements, EPCA was not intended to preempt the code's "requirements concerning the energy efficiency or energy use of covered products." See H. Rep. No. 100-11, at 26.

## IV.   ARGUMENT

The BIAW's challenge to Chapter 9 of Washington's 2009 building energy code presents a narrow legal question:  Does the 2009 code fall within EPCA's explicit exemption from preemption for state building codes?  The answer is clearly yes, and this Court should hold that the options offered in Chapter 9 to use EPCA-covered products are not preempted by federal law and should grant the State Defendant and Defendant-Intervenors' joint motion for summary judgment.

**A.   Legal Standards**

**1.   Summary Judgment**

Summary judgment should be granted where "there is no genuine issue as to any material fact and . . . the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986).  Because defendants' motion raises purely legal issues regarding the issue of express preemption, summary judgment is appropriate.

STATE DEFENDANT AND
DEFENDANT-INTERVENORS' JOINT
MOTION FOR SUMMARY JUDGMENT
-- NO.  3:10-CV-05373-RJB

24

ATTORNEY GENERAL OF WASHINGTON
Government Operations Division
7141 Cleanwater Drive SW
PO Box 40108
Olympia, WA 98504-0108
(360) 586-3636

## 2.    Preemption

The courts have recognized three types of federal preemption challenges:   express preemption, preemption where federal law occupies the field, or areas where federal law conflicts with state requirements.  See English v. General Elec. Co., 496 U.S. 72, 78-79 (1990). All parties agree that this case involves a question of express federal preemption.  See Doc. 1 (Complaint) ¶¶ 3, 50, 72.

Under claims of express preemption, the question before the Court hinges on interpretation of the federal statute that allegedly preempts Chapter 9.  See Medtronic, Inc. v. Lohr, 518 U.S. 470, 484-85 (1996) ("[t]he purpose of Congress is the ultimate touchstone in every preemption case") (internal quotations marks omitted); Cipollone v. Liggett Group, Inc., 505 U.S. 504, 529 n.27 (1992) (any understanding of the scope of a preemption statute must rest primarily on "a fair understanding of congressional purpose").  In this case, the statute that allegedly preempts Chapter 9 – 42 U.S.C. § 6297 – includes both an express preemption and a provision that exempts state regulations from that preemption if a seven-part test is met.  See 42 U.S.C. § 6297(f)(3).  It is therefore clear that Congress intended that in some cases, state regulations would not be preempted by EPCA.

Furthermore, there is a presumption against finding a state law to be preempted by federal legislation.  Express preemption clauses should be read narrowly if there is any ambiguity as to their scope.  See Altria Group, Inc. v. Good, 129 S. Ct. 538, 543 (2008) ("[W]hen the text of a preemption clause is susceptible of more than one plausible reading, courts ordinarily accept the reading that disfavors preemption.").  Courts err on the side of not finding preemption because a state cannot reverse a judicial finding of preemption, whereas

STATE DEFENDANT AND
DEFENDANT-INTERVENORS' JOINT
MOTION FOR SUMMARY JUDGMENT
-- NO.  3:10-CV-05373-RJB

25

ATTORNEY GENERAL OF WASHINGTON
Government Operations Division
7141 Cleanwater Drive SW
PO Box 40108
Olympia, WA 98504-0108
(360) 586-3636

1    Congress can clearly express its intent to restrain state action if it interferes with federal

2    prerogative.  See Chevron U.S.A., Inc. v. Hammond, 726 F.2d 483, 488 (9th Cir. 1984).

3    Finally, the presumption against preemption is especially strong where, as in this case, a state,

4    as an independent sovereign in our federal system, is operating in an area of historic state

5    police power.  See VP Racing Fuels, Inc. v. Gen. Petroleum Corp., 673 F. Supp. 2d 1073, 1079

6    (E.D. Cal. 2009) (quoting Altria, 129 S. Ct. at 543); see also Rapanos v. United States, 547

7    U.S. 715, 738 (2006) (building codes are "a quintessential state and local power") (citations

8    omitted).

9

10         3.    **To Prove Chapter 9 is Facially Unconstitutional, the BIAW Must Establish
               That no Circumstances Exist under Which Chapter 9 Would be Valid**

11         Because BIAW is bringing a facial constitutional challenge to Chapter 9, Doc. 1

12   (Complaint) at ¶29, the burden is on it to "establish that no set of circumstances exists under

13   which the [regulation] would be valid."  United States v. Salerno, 481 U.S. 739, 745 (1987);

14   accord California Coastal Comm'n v. Granite Rock Co., 480 U.S. 572, 593 (1987) (stating that

15   to survive a facial challenge regarding preemption by federal mining law, state "needed merely

16   to identify a possible set of [state] permit conditions not in conflict with federal law");

17   Anderson v. Edwards, 514 U.S. 143, 155 n.6 (1995) (applying Salerno "no set of

18   circumstances" test to a federal preemption facial challenge to a state statute).  A facial attack

19   is "the most difficult challenge to mount successfully."  See Salerno, 481 U.S. at 745.  Facial

20   invalidation of a regulation "is, manifestly, strong medicine" that "has been employed by the

21   Court sparingly and only as a last resort."  See Broadrick v. Oklahoma, 413 U.S. 601, 613

22   (1973).

23

24

25

26

STATE DEFENDANT AND
DEFENDANT-INTERVENORS' JOINT
MOTION FOR SUMMARY JUDGMENT
-- NO. 3:10-CV-05373-RJB

26

ATTORNEY GENERAL OF WASHINGTON
Government Operations Division
7141 Cleanwater Drive SW
PO Box 40108
Olympia, WA 98504-0108
(360) 586-3636

1    That "strong medicine" is not available to BIAW here.  Plaintiffs' challenge must fail if

2    there is at least one set of circumstances under which one of the Chapter 9 options that utilizes

3    HVAC or water heating equipment that exceeds federal minimum standards meets the criteria

4    for exemption from preemption under EPCA § 6297(f).

5

6        BIAW argues that Chapter 9 "effectively mandates" installation of equipment that

7    exceeds federal standards, see Doc. 1 (Complaint) at ¶¶ 67, 60, 64.  The Ninth Circuit Court of

8    Appeals addressed a similar argument in Sprint Telephony PCS, L.P. v. Cy. of San Diego, 543

9    F.3d 571 (9th Cir. 2008).  In that case, Sprint argued that a local telecommunications ordinance

10   "effectively" prohibited its provision of wireless services.  Citing Salerno, the appellate court

11   upheld the local ordinance from the facial preemption challenge because Sprint did not prove

12   that it would be impossible to provide wireless services.  "Sprint cannot meet its high burden

13   of proving that 'no set of circumstances exists under which the [Ordinance] would be valid'

14   simply because the zoning board exercises some discretion."  Id. at 580 (Salerno citation

15   omitted).  Like Sprint, BIAW's facial challenge must fail.

16

17   **B.     EPCA Does Not Preempt Chapter 9 of Washington's Building Energy Code**

18       As described above, Chapter 9 of the Washington building energy code gives builders

19   two main choices to achieve an eight percent reduction in energy efficiency.  Builders who

20   choose the Chapter 4 baseline meet their Chapter 9 obligations by demonstrating as part of

21   their Chapter 4 systems analysis that their proposed building uses eight percent less energy

22   than the code-specified target building.  For builders who do not wish to do the computer

23   modeling required for Chapter 4 compliance, Chapter 9 offers a menu of 13 energy-efficient

24   building design options to reduce their energy use by the required eight percent.  As illustrated

25

26

STATE DEFENDANT AND
DEFENDANT-INTERVENORS' JOINT
MOTION FOR SUMMARY JUDGMENT
-- NO.  3:10-CV-05373-RJB

27

ATTORNEY GENERAL OF WASHINGTON
Government Operations Division
7141 Cleanwater Drive SW
PO Box 40108
Olympia, WA 98504-0108
(360) 586-3636

in Table 9-1 above, among these 13 options, four options allow the use of equipment that exceeds EPCA efficiency standards (option 1a, a portion of option 2, option 5a, and a portion of option 5b) (hereafter "the four EPCA product options").

EPCA's general preemption provision preempts all state regulation concerning the energy efficiency, energy use, or water use of "covered products," or products for which a federal minimum efficiency standard has been established. 42 U.S.C. § 6297(c). The parties do not dispute that Chapter 9 is a "[s]tate regulation concerning the energy efficiency" of covered products. Id.[16] However, under EPCA's exemption from preemption for building codes, states are explicitly authorized to achieve energy savings through building codes that include "covered products" so long as the building code complies with a seven-part test. Id. § 6297(f)(3)(A)-(G). Washington's 2009 building energy code meets each of the seven factors in EPCA's statutory exemption from preemption, as explained in greater detail below. See 42 U.S.C. § 6297(f)(3).[17] Washington's code is precisely the kind of building code that Congress intended to exempt from preemption in EPCA. S. Rep. No. 100-6, at 10; see also H. Rep. No. 100-11, at 26. The inclusion of "covered products" in the four EPCA product options is therefore permissible under federal law.

---

[16] The Second Circuit's opinion in Metropolitan Taxicab Bd. of Trade v. City of New York is not applicable here. See 615 F.3d 152 (2d Cir. 2010). In Metropolitan Taxi, the Second Circuit, parsing a different and far broader preemption provision with respect to fuel efficiency found elsewhere in EPCA, held that New York's rules on lease caps for hybrid taxicabs were rules "related to" fuel efficiency and fell within EPCA's preemption provision and were preempted under that provision. Id. at 157-58. Significantly, the EPCA preemption provision in Metropolitan Taxi does not provide for exemptions from preemption, as does the provision at issue here.
[17] Even if inclusion of EPCA "covered products" in the four EPCA covered product is held to be preempted by EPCA, the balance of Chapter 9 is not preempted and would remain in full force and effect. See 2009 Code §109 ("If any provision of this Code or its application to any person or circumstance is held invalid, the remainder of this Code or the application of the provision to other persons or circumstances is not affected."). As a result, a victory for the BIAW would leave builders in a worse position than if the BIAW had lost, because builders would have fewer pre-approved choices to achieve the eight percent energy reduction requirement in Chapter 9.

STATE DEFENDANT AND
DEFENDANT-INTERVENORS' JOINT
MOTION FOR SUMMARY JUDGMENT
-- NO. 3:10-CV-05373-RJB

28

ATTORNEY GENERAL OF WASHINGTON
Government Operations Division
7141 Cleanwater Drive SW
PO Box 40108
Olympia, WA 98504-0108
(360) 586-3636

C.     **Chapter 9 of Washington's Building Energy Code Meets EPCA's Seven Factor Preemption Exception**

1.     **Factor One: The Washington Code Offers Builders Numerous Options to Meet the Code's Overall 15 percent Energy Efficiency Requirement and Eight Percent Energy Efficiency Requirement in Chapter 9 and the BIAW Does Not Allege Otherwise**

The first of the seven factors that state building codes must meet to fall within EPCA's exemption from preemption provides that the state code must offer builders multiple options to meet an energy consumption or conservation objective. 42 U.S.C. § 6297(f)(3)(A) (a building code must allow builders to "meet an energy consumption or conservation objective for a building by selecting items whose combined energy efficiencies meet the objective"). By requiring that codes provide builders with multiple options to improve efficiency, this factor requires that codes be performance-based, rather than purely prescriptive, to escape preemption. See S. Rep. No. 100-6, at 10 ("These codes authorize builders to adjust or trade off the efficiencies of the various building components so long as an energy objective is met."); H. Rep. No. 100-11, at 26 ("The provisions give the State flexibility in implementing performance-based building code approaches. Such approaches authorize builders to adjust or trade off the efficiencies of the various building components, including certain covered products, so long as an overall energy objective is met.").

Washington's building energy code clearly complies with this factor – indeed, BIAW does not allege otherwise. See Doc. 1 (Complaint) at ¶ 56. Washington's code gives builders the choice of three different overall compliance pathways, each of which allows builders to "adjust or trade off the efficiencies of the various building components" to achieve a 15 percent overall reduction in total building energy use. See Declaration of Thomas Eckman at ¶

STATE DEFENDANT AND
DEFENDANT-INTERVENORS' JOINT
MOTION FOR SUMMARY JUDGMENT
-- NO. 3:10-CV-05373-RJB

29

ATTORNEY GENERAL OF WASHINGTON
Government Operations Division
7141 Cleanwater Drive SW
PO Box 40108
Olympia, WA 98504-0108
(360) 586-3636

13-14; see also Declaration of Tim Nogler at ¶18 (15 percent energy savings goal is achieved through seven percent reduction in baseline compliance pathways and eight percent reduction in Chapter 9); S. Rep. No 100-6, at 10; see also supra at pp. 10-11.

Builders who choose the Chapter 4 systems analysis performance pathway comply with Chapter 9 by including within their systems analysis an additional eight percent reduction in the proposed building's annual energy use. See 2009 Code § 901 ("Buildings complying using Chapter 4" must "demonstrate[e] that the proposed building energy use is eight percent less than the target building energy use."). Chapter 4 allows builders to trade off the efficiencies of *all* building components as part of the annual energy use analysis, and so clearly gives builders the option of "selecting items whose combined energy efficiencies" meet the code's energy savings objective. 42 U.S.C. § 6297(f)(3)(A).

Under the Chapter 5 envelope component tradeoff performance pathway and the Chapter 6 prescriptive requirements pathway, builders achieve the additional eight percent performance requirements of Chapter 9 by choosing one or more options from a pre-approved list of energy efficient building design options to achieve one "credit." Declaration of Thomas Eckman at ¶ 14-15; see also Declaration of Tim Nogler at ¶ 19. Given the complexity of calculating energy efficiencies, offering a pre-approved list of options that have been determined to achieve the required eight percent savings is realistically the only way to offer options to builders who choose not to do a complex computer systems analysis. Declaration of Thomas Eckman at ¶18.

Chapters 4, 5, 6, and 9 clearly give builders the option of "selecting items whose combined energy efficiencies" meet the code's energy efficiency requirements. See 42 U.S.C.

STATE DEFENDANT AND
DEFENDANT-INTERVENORS' JOINT
MOTION FOR SUMMARY JUDGMENT
-- NO. 3:10-CV-05373-RJB

30

ATTORNEY GENERAL OF WASHINGTON
Government Operations Division
7141 Cleanwater Drive SW
PO Box 40108
Olympia, WA 98504-0108
(360) 586-3636

§ 6297(f)(3)(A).   As the BIAW has conceded by failing to allege otherwise, Washington's code satisfies the first of the seven EPCA factors.  See 42 U.S.C. § 6297(f)(3)(A); H. Rep. No. 100-11, at 26.

### 2.   Factor Two: The Washington Code Does Not Expressly or Effectively Require Efficiency Levels Beyond the Federal Minimum Standards

The second EPCA factor prevents states from *requiring* that covered products be more efficient than the federal minimum standard for all new buildings.   See 42 U.S.C. § 6297(f)(3)(B) (a code must "not require that the covered product have an energy efficiency exceeding the applicable energy conservation standard established in or prescribed under section 6295 of this title"); see also H. Rep. No. 100-11, at 25 ("Section 7 prevents State building codes from being used as a means of setting mandatory State appliance standards in excess of the Federal standards.").[18]   While this factor prohibits codes from requiring use of covered products more efficient than federal minimum standards as the only way to comply with the code, it does not prevent states from giving builders the option to install more efficient covered products as one option towards compliance in a performance-based code, or from giving builders credit for the resulting energy savings when they do.  See S. Rep. No. 100-6, at 10 (the building code exemption "allows a State flexibility to implement performance-based codes" that contain covered products); H. Rep. No. 100-11, at 26; see also 42 U.S.C. § 6297(f)(3)(E) permitting codes regulating covered products so long as, "for every

---

[18] This factor also provides that a code may require a standard higher than the federal minimum where "the Secretary has issued a rule granting a waiver under subsection (d) of this section."  See 42 U.S.C. § 6297(f)(3)(B  Washington has not requested a waiver, nor is it required to do so because of the separate exemption from preemption of building codes, so this provision is not applicable.   Similarly, the provisions concerning a subsection (d) waiver in the fourth and fifth factors of the seven part test are also not applicable.  Id. § 6297(f)(3)(D) – (E)

STATE DEFENDANT AND
DEFENDANT-INTERVENORS' JOINT
MOTION FOR SUMMARY JUDGMENT
-- NO.  3:10-CV-05373-RJB

31

ATTORNEY GENERAL OF WASHINGTON
Government Operations Division
7141 Cleanwater Drive SW
PO Box 40108
Olympia, WA 98504-0108
(360) 586-3636

1   combination which includes a covered product the efficiency of which exceeds" federal

2   standards, there is an option that does not require a higher-efficiency product).

3           Washington's code easily meets this requirement as well: each of the three compliance

4   pathways in the code may be met without the use of covered products that are more efficient

5   than federal minimum standards.  It is undisputed that the baseline prescriptive requirements of

6   Chapters 5 and 6 do not require the installation of covered products that are more efficient than

7   the federal minimum standards.  Declaration of Tim Nogler at ¶ 16.  Likewise, it is undisputed

8   that builders may comply with Chapter 4 without installing covered products that are more

9   efficient than the federal minimum standards.  Id. at ¶ 16; also see Declaration of Thomas

10  Eckman, Nov. 5, 2010 at ¶ 13d.  For builders who choose to proceed under Chapter 5 or

11  Chapter 6, Table 9-1 does not require the use of covered product with an energy efficiency

12  exceeding the federal minimum standard.  See Declaration of Thomas Eckman, at ¶ 15-16.

13  Chapter 9 plainly offers builders multiple options that do not include covered products,

14  including options to improve the insulation of the building envelope, install a heat recovery

15  ventilation system and improve air leakage control, install solar panels, or some combination

16  of the above.  See 2009 Code Table 9-1 (Options 1b, 1c, a portion of 2, 3a, 3b, 3c, 4a, 4b, a

17  portion of 5b, 6, and 8); see also Declaration of Martha Rose, (Oct. 21, 2010) at ¶ 21 &

18  Appendix A (homes that were recently constructed would have received multiple credits under

19  Chapter 9, including credits for options that do not include covered products).  The BIAW

20  concedes that many of these options contain no reference to EPCA covered products, see Doc.

21  1 (Complaint), at ¶¶ 37, 38, 44 (discussing Options 3a, 3b, 3c, 4a, 4b, and 8).  Indeed, nine out

22  of 13 options make no reference whatsoever to EPCA covered products (options 1b, 1c, 3a, 3b,

STATE DEFENDANT AND
DEFENDANT-INTERVENORS' JOINT
MOTION FOR SUMMARY JUDGMENT
-- NO.  3:10-CV-05373-RJB

32

ATTORNEY GENERAL OF WASHINGTON
Government Operations Division
7141 Cleanwater Drive SW
PO Box 40108
Olympia, WA 98504-0108
(360) 586-3636

3c, 4a, 4b, 6, and 7) and two additional options include equipment that is not an EPCA covered product (option 5b, sub-parts of option 2.)

Moreover, all of these options are readily available. See, e.g. Declaration of Martha Rose, at ¶ 24. ("In my experience, the equipment discussed in the code is available and affordable, and has been for many years. For example, Atrium, a window manufacturer in Washington state, has been making a triple glazed U25 window for at least five years."); Declaration of Gary Nordeen (Oct. 26, 2010) at ¶ 14. ("In sum, builders will be able to comply with Chapter 9 of Washington's new energy code using products that are currently commercially available in Washington State and are already being used by builders in Washington State, with a minimal impact on the overall cost of construction"); see also; Declaration of Paul Huff, Oct. 26, 2010 at ¶ 10. ("Based on my extensive experience with building and contracting, it is my opinion that each of the compliance pathways in Chapter 9 of the 2009 Washington State Energy Code is readily available to builders"). Because Chapter 9 offers builders multiple readily-available compliance options that do not rely on covered equipment, it does not "expressly or effectively require" the use of covered products that exceed federal minimum standards. See H. Rep. No. 100-11, at 25.

Washington's code "does not require that [any] covered product have an energy efficiency exceeding the applicable energy conservation standard" under EPCA and it meets the second of the seven EPCA factors. See 42 U.S.C. § 6297(f)(3)(B).

### 3.   Factor Three: The Washington Code Assigns Credits That Are Even-Handed and Not Unfairly Weighted

The third EPCA factor requires states to fairly weight the credit builders receive for the energy savings resulting from different efficient building design options. Where different

STATE DEFENDANT AND
DEFENDANT-INTERVENORS' JOINT
MOTION FOR SUMMARY JUDGMENT
-- NO. 3:10-CV-05373-RJB

33

ATTORNEY GENERAL OF WASHINGTON
Government Operations Division
7141 Cleanwater Drive SW
PO Box 40108
Olympia, WA 98504-0108
(360) 586-3636

options under the code achieve similar energy savings, the credits awarded for these options must be equivalent; conversely, where different options do not achieve comparable energy savings, the credit for such options must be weighted accordingly.   See 42 U.S.C. § 6297(f)(3)(C) (requiring that "[t]he credit to the energy consumption or conservation objective allowed by the code for installing covered products having energy efficiencies exceeding such energy conservation standard established in or prescribed under § 6295 of this title . . . is on a one-for-one equivalent energy use or equivalent cost basis"); see also S .Rep. No 100-6, at 10 ("[T]his paragraph also requires States building codes which establish 'credits' for various conservation measures, to provide, to the greatest degree possible, one-for-one equivalency between the energy efficiency of these differing measures and the credits provided for such energy efficiency.").   "Equivalent energy use" basis means that the credits are assigned based on how much energy is used or saved by each option.  "Equivalent cost basis" means that the credits are assigned based on the cost of the energy that will be used by the consumer for each option, i.e., the cost of energy flowing through the homeowner's electric meter.  See infra at 38-39 (discussion of parallel language in factor six).

Washington's code also clearly meets this requirement because it assigns credits based on the energy use of each option.   Regardless of whether builders elect to proceed under Chapter 4, Chapter 5, or Chapter 6, they are all required to achieve an energy savings objective of 15 percent overall and of eight percent pursuant to Chapter 9.   For builders who proceed under Chapter 5 or Chapter 6, Chapter 9 requires builders to select an option or combination of options from Table 9-1 to "develop one credit"; each "credit" achieves approximately an eight percent reduction in total building energy use.  See Declaration of Thomas Eckman at ¶ 14; see

STATE DEFENDANT AND
DEFENDANT-INTERVENORS' JOINT
MOTION FOR SUMMARY JUDGMENT
-- NO. 3:10-CV-05373-RJB

34

ATTORNEY GENERAL OF WASHINGTON
Government Operations Division
7141 Cleanwater Drive SW
PO Box 40108
Olympia, WA 98504-0108
(360) 586-3636

also Declaration of Tim Nogler at ¶18-19; See 2009 Code § 901. The different efficient design options in Table 9-1 achieve different energy savings; accordingly, Washington's code weights the credits assigned to each to ensure that the code "provide[s], to the greatest degree possible, one-for-one equivalency between the energy efficiency of these differing measures and the credits provided for such energy efficiency." S. Rep. No. 100-6, at 10; see also Declaration of Thomas Eckman at ¶ 25. For example, because Options 1a and 1c achieve similar energy savings, both are assigned one credit; Option 3a achieves half the energy savings of 1a or 1c and so is assigned 0.5 credits. See 2009 Code § 901 Table 9-1; Declaration of Thomas Eckman at ¶ 26. While one credit from Table 9-1 equates to approximately an eight percent energy savings, the energy saved by each option is not identical; for example, some of the options that are assigned one credit achieve on average an eight percent savings in total building energy use, while others achieve on average a seven percent savings in total building energy use. Congress recognized, however, that identical energy savings frequently would not be possible. See S. Rep. No. 100-6, at 10 ("in some cases, exact equivalency is not possible"). The credits in Chapter 9 are weighted based on the energy use saved by each option; therefore, the credits allowed are on a one for one equivalent energy use basis. See Declaration of Thomas Eckman at ¶ 26.

By weighting credits assigned to each Chapter 9 option based on the average energy savings each achieves, the Washington code "follow[s] a one-for-one equivalency as closely as possible, to assure that the credits for exceeding Federal standards are even-handed and are not unfairly weighted resulting in undue pressure on builders to install covered products exceeding Federal standards." See S. Rep. No. 100-6, at 10. Accordingly, the code complies with

STATE DEFENDANT AND
DEFENDANT-INTERVENORS' JOINT
MOTION FOR SUMMARY JUDGMENT
-- NO. 3:10-CV-05373-RJB

35

ATTORNEY GENERAL OF WASHINGTON
Government Operations Division
7141 Cleanwater Drive SW
PO Box 40108
Olympia, WA 98504-0108
(360) 586-3636

1   EPCA's third factor of the building code exemption from preemption.   See 42 U.S.C. §

2   6297(f)(3)(C).

3         **4.     Factor Four: The Washington Code Does Not Require the Use of a Single
4                  Baseline Building Design and the BIAW Does Not Allege Otherwise**

5         The fourth factor concerns baseline building designs, and it is undisputed that the

6   Washington code meets this requirement.   See, Doc. 1 (Complaint) at ¶ 59 ("This requirement

7   does not apply to the facts at hand.").   Under this factor, if the code requires that all buildings

8   be compared to a baseline building design, then that baseline design must not include covered

9   products with efficiency standards that are higher than the federal minimum standards.   See 42

10  U.S.C. § 6297(f)(3)(D) .   ("If the code uses one or more baseline building designs against

11  which all submitted building designs are to be evaluated and such baseline building designs

12  contain a covered product subject to an energy conservation standard established in or

13  prescribed under § 6295 of this title, the baseline building designs are based on the efficiency

14  level for such covered product which meets but does not exceed such standard . . .").

15        The parties agree that Washington's code does not require all proposed designs to be

16  evaluated against a single baseline design.[19]   Because Washington's code does not require all

17  proposed designs to be evaluated against a single baseline design, Washington's code complies

18  with this factor.   See 42 U.S.C. § 6297(f)(3)(D).

---

[19] As discussed above, Chapter 4 requires the comparison of a builder's proposed building with a target building. However, builders are not required to select the Chapter 4 pathway. (Moreover, even if builders were required to use Chapter 4, the target building does not include products that exceed federal minimum standards.) Chapter 5 and Chapter 6 neither require the comparison of all submitted designs to a baseline design nor contain any covered products with efficiency levels higher than the federal minimum standards.

STATE DEFENDANT AND
DEFENDANT-INTERVENORS' JOINT
MOTION FOR SUMMARY JUDGMENT
-- NO.  3:10-CV-05373-RJB

36

ATTORNEY GENERAL OF WASHINGTON
Government Operations Division
7141 Cleanwater Drive SW
PO Box 40108
Olympia, WA 98504-0108
(360) 586-3636

5.      **Factor Five: The Code Offers an Evenly Balanced Range of Options**

The fifth factor of the EPCA preemption exemption provides that if the code offers builders a menu of options to pick from, that menu must be evenly balanced such that it contains a mix of options with and without covered products that exceed the federal minimum standards. Specifically, if some options include efficiency levels for covered products that are well above the federal minimum standards, there must be at least an equal number of options that are, at most, only marginally above the federal minimum, and at least one option that requires no more than the federal minimum standard for that covered product. See 42 U.S.C. § 6297(f)(3)(E) ("[i]f the code sets forth one or more optional combinations of items which meet the energy consumption or conservation objective, for every combination which includes a covered product the efficiency of which exceeds either standard or level referred to in subparagraph (D), there also shall be at least one combination which includes such covered product the efficiency of which does not exceed such standard or level by more than 5 percent, except that at least one combination shall include such covered product the efficiency of which meets but does not exceed such standard").

Washington's code clearly meets this requirement as well: builders who proceed under Chapter 4 are unconstrained in the means by which they achieve the required additional eight percent savings. For builders who elect Chapter 5 or Chapter 6, Table 9-1 offers a balanced range of 13 options, including options that do and do not include covered products. A four to nine ratio[20] clearly satisfies EPCA's requirement that there be at least as many options that do not use high efficiency covered products as those that do; likewise, the 9 options that do not

---

[20] See supra 15-19.

STATE DEFENDANT AND
DEFENDANT-INTERVENORS' JOINT
MOTION FOR SUMMARY JUDGMENT
-- NO.  3:10-CV-05373-RJB

37

ATTORNEY GENERAL OF WASHINGTON
Government Operations Division
7141 Cleanwater Drive SW
PO Box 40108
Olympia, WA 98504-0108
(360) 586-3636

require *any* improvements above the federal minimum standards for any covered product easily

satisfy the requirement that at least one option require no more than the federal minimum.  See

42 U.S.C. § 6297(f)(3)(E).

### 6.   Factor Six: The Energy Savings Goal of the Washington Code is Measured in Energy Use

The next EPCA factor requires states to measure the code's energy savings objective in

terms of either energy use or energy cost, allowing them to choose between these two forms of

measurement.   See  42 U.S.C. § 6297(f)(3)(F) (the "energy consumption or conservation

objective is specified in terms of an estimated total consumption of energy (which may be

calculated from energy loss- or gain-based codes) utilizing an equivalent amount of energy

(which may be specified in units of energy or its equivalent cost)").   The legislative history

clarifies that this factor and the parallel language in factor (C) were amended to broaden the

original requirement that codes measure energy savings in terms of energy use so that states

with codes that measured energy consumption in terms of energy costs would fall within the

exemption from preemption as well.   See S. Rep. No. 100-6, at 6 ("[T]he legislation, as

amended, would allow tradeoffs between components based either on their energy usage or

equivalent energy costs . . . The amendment is necessary because some State energy codes are

based on energy costs, and not on an energy use.").   Washington's code clearly meets this

requirement as well: the goal of the 2009 building energy code is to reduce the total energy use

of new homes by 15 percent."   See Declaration of Thomas Eckman at ¶ 31; see also

Declaration of Tim Nogler at ¶ 8 (eight percent of the savings is found in Chapter 9).   To meet

this goal, the code allows "tradeoffs between components based on . . . their energy usage" by

allowing any number of component tradeoffs to meet the energy savings goal in a Chapter 4

STATE DEFENDANT AND
DEFENDANT-INTERVENORS' JOINT
MOTION FOR SUMMARY JUDGMENT
-- NO.  3:10-CV-05373-RJB

38

ATTORNEY GENERAL OF WASHINGTON
Government Operations Division
7141 Cleanwater Drive SW
PO Box 40108
Olympia, WA 98504-0108
(360) 586-3636

analysis, and tradeoffs between the various listed efficient design options in Chapter 9.  See S. Rep. No. 100-6, at 6  Because Washington's code has a conservation goal of reducing total building energy use by 15 percent and because this energy savings goal is measured based on energy use, the code complies with factor six.  See 42 U.S.C. § 6297(f)(3)(F).

### 7.  Factor Seven: The Code Uses Federal Test Procedures to Measure Energy Use

The final EPCA factor addresses how the energy use of covered products is determined. It requires that states use federal test procedures to determine how much energy any covered product uses, with adjustments allowed for different climate zones.   See 42 U.S.C. § 6297(f)(3)(G) (requiring that "[t]he estimated energy use of any covered product permitted or required in the code, or used in calculating the objective, is determined using the applicable test procedures prescribed under § 6293 of this title, except that the State may permit the estimated energy use calculation to be adjusted to reflect the conditions of the areas where the code is being applied if such adjustment is based on the use of the applicable test procedures prescribed under § 6293 of this title or other technically accurate documented procedure").

Washington's code clearly complies with this factor because it requires HVAC equipment and water heaters to comply with the National Appliance Energy Conservation Act, including the federal testing requirements.  See 2009 Code §§ 503.4 (HVAC equipment); 504.2.1 (water heaters); see also Declaration of Tim Nogler at ¶ 8; see also Declaration of Thomas Eckman at ¶ 33.  Plaintiffs do not claim otherwise.

STATE DEFENDANT AND
DEFENDANT-INTERVENORS' JOINT
MOTION FOR SUMMARY JUDGMENT
-- NO.  3:10-CV-05373-RJB

39

ATTORNEY GENERAL OF WASHINGTON
Government Operations Division
7141 Cleanwater Drive SW
PO Box 40108
Olympia, WA 98504-0108
(360) 586-3636

**D.      Congress Intended To Exempt Performance-Based Building Codes From Preemption Under EPCA**

As discussed above, Chapter 9 of Washington's 2009 building energy code meets each of the seven requirements in EPCA's exemption from preemption. See 42 U.S.C. § 6297(f)(3). Chapter 9 complies with the plain language of this express exemption to preemption; moreover, "'a fair understanding of congressional purpose' as evidenced by the relevant legislative history" compels the same conclusion.  See AHRI, 410 F.3d at 498 (quoting Medtronic, 518 U.S. at 485-86).   Additionally, the legislative history of the building code exemption in particular and the overall structure and purpose of EPCA, both discussed above, demonstrate that Congress intended to exempt performance-based codes such as Washington's from preemption, even if they incorporate pathways that involve more efficient equipment.

As EPCA's legislative history indicates, Congress intended to allow performance-based codes such as Washington's.  See S. Rep. No. 100-6, at 10 ("The paragraph, therefore, allows a State flexibility to implement performance-based codes."); See H. Rep. No. 100-11, at 26 ("The provisions give the State flexibility in implementing performance-based building code approaches.").  Performance-based codes give builders the flexibility to "adjust or trade off the efficiencies of the various building components, including certain covered products, so long as an overall energy objective is met." See H. Rep. No. 100-11, at 26; see also S. Rep. No. 100-6, at 10.  Because performance-based codes allow builders to choose between installing covered products that exceed federal standards or improving the efficiency of other building components, they prevent state codes "from being used as a means of setting mandatory State appliance standards in excess of the Federal standards." See H. Rep. No. 100-11, at 26.

STATE DEFENDANT AND
DEFENDANT-INTERVENORS' JOINT
MOTION FOR SUMMARY JUDGMENT
-- NO.  3:10-CV-05373-RJB

40

ATTORNEY GENERAL OF WASHINGTON
Government Operations Division
7141 Cleanwater Drive SW
PO Box 40108
Olympia, WA 98504-0108
(360) 586-3636

Similarly, the overall structure of EPCA confirms that Congress intended to allow performance-based codes that include more efficient equipment provisions. EPCA's core purposes include promoting energy efficiency and reducing domestic energy consumption. EPCA also contains provisions to encourage states to develop strong energy codes, see supra at § II.B, and an explicit exemption from preemption for performance-based codes, see 42 U.S.C. § 6297(f)(3). Washington's 2009 building energy code will reduce the energy use of new residential buildings in Washington by 15 percent; such a goal substantially furthers EPCA's purpose of reducing domestic energy consumption and promoting energy efficiency. Accordingly, a fair understanding of the purposes of EPCA also supports the conclusion that Washington's code is not preempted.

Defendants are aware of only one other federal court opinion that directly addresses the question of federal preemption of a building energy code. See Air Conditioning, Heating & Refrigeration Inst. v. Albuquerque, No. 08-633 MV/RLP, slip op. at 9 (D.N.M. Sept. 30, 2010) (AHRI v. Albuquerque). In AHRI v. Albuquerque, a coalition of trade associations challenged the city's commercial and residential building codes as preempted by EPCA. The city of Albuquerque's code contains multiple compliance pathways, some prescriptive and some performance based. See Slip op. at 2, 7. On the trade associations' motion for summary judgment, the court held that the prescriptive pathways in Albuquerque's code were preempted by EPCA because they explicitly require the use of covered products with efficiency levels higher than the federal minimum standards for those products. Id. at 6 ("the prescriptive provisions of [the code] requiring the use of heating, ventilation, or air conditioning products or water heaters with energy efficiency standards more stringent than federal standards . . . are

STATE DEFENDANT AND
DEFENDANT-INTERVENORS' JOINT
MOTION FOR SUMMARY JUDGMENT
-- NO.  3:10-CV-05373-RJB

41

ATTORNEY GENERAL OF WASHINGTON
Government Operations Division
7141 Cleanwater Drive SW
PO Box 40108
Olympia, WA 98504-0108
(360) 586-3636

preempted as a matter of law"); Id. at 7-8 (same).  The court denied without prejudice the plaintiffs' motion for summary judgment regarding the performance-based compliance pathways in the commercial portions of the code because the plaintiffs neither alleged sufficient facts nor adequately argued in their opening brief that the performance-based pathways were preempted. Id. at 6-7.  The plaintiffs did not challenge the performance-based pathway in the residential code. See id. at 7 ("In their Volume II motion, Plaintiffs contend that all of the compliance paths, except Section 405, are preempted as a matter of law.").

AHRI v. Albuquerque offers little guidance here because the portions of the Albuquerque code addressed by the district court are factually distinguishable from Chapter 9 of the Washington code.  The court held that the prescriptive pathways in Albuquerque's code that required the use of covered products above federal minimum standards were preempted, but it is undisputed that the prescriptive pathways in Washington's code do not require the use of covered products above the federal minimum standards – indeed, the BIAW is not challenging Chapters 5 or 6. See supra at 12.  Similarly, the AHRI v. Albuquerque court held that the prescriptive pathway in the Albuquerque code failed to meet the fourth preemption exemption factor, § 6297(f)(3)(D). See Slip op at 9 ("Because its standard reference design is based on efficiency levels which exceed the federal efficiency standards, § 404 does not qualify for the new building exception to the preemption statute.").  Here, however, it is uncontested that the Washington code does meet this fourth EPCA preemption factor. Supra at 36-37.

Moreover, the plaintiffs in AHRI v. Albuquerque abandoned their challenge to the performance-based pathway in Albuquerque's residential code, and the court had no occasion

STATE DEFENDANT AND
DEFENDANT-INTERVENORS' JOINT
MOTION FOR SUMMARY JUDGMENT
-- NO.  3:10-CV-05373-RJB

42

ATTORNEY GENERAL OF WASHINGTON
Government Operations Division
7141 Cleanwater Drive SW
PO Box 40108
Olympia, WA 98504-0108
(360) 586-3636

to consider whether a performance-based code such as Washington's falls within EPCA's detailed exemption to preemption. Accordingly, nothing in AHRI v. Albuquerque undermines the conclusion that Chapter 9 of Washington's code falls within EPCA's express exemption from preemption.

## V.    CONCLUSION

For the reasons stated above, Plaintiffs' challenge to Chapter 9 of the 2009 Washington building energy code should be rejected as a matter of law because the code meets the seven-part test for exemption to preemption under EPCA. Accordingly, the Court should grant the State Defendant and Defendant-Intervenors' joint motion for summary judgment.

RESPECTFULLY SUBMITTED, this 9th day of November, 2010.

ROBERT M. MCKENNA
Attorney General

s/ Ann C. Essko
ANN C. ESSKO, WSBA #15472
E-mail: AnnE@atg.wa.gov
Telephone: (360) 586-3633

s/ Sandra Adix
SANDRA ADIX, WSBA #22536
E-mail: SandraA@atg.wa.gov
Telephone: (360) 664-4965
Attorneys for Defendant Building Code Council

s/ Amanda Goodin & Kristen Boyles (email approval)
AMANDA GOODIN, WSBA No. 41312
KRISTEN L. BOYLES, WSBA No. 23806
Earthjustice
705 Second Avenue, Suite 203
Seattle, WA 98104
(206) 343-7340 phone
(206) 343-1526 fax

STATE DEFENDANT AND
DEFENDANT-INTERVENORS' JOINT
MOTION FOR SUMMARY JUDGMENT
-- NO. 3:10-CV-05373-RJB

43

ATTORNEY GENERAL OF WASHINGTON
Government Operations Division
7141 Cleanwater Drive SW
PO Box 40108
Olympia, WA 98504-0108
(360) 586-3636

agoodin@earthjustice.org
kboyles@earthjustice.org

Attorneys for Defendant-Intervenors NW Energy
Coalition, Sierra Club, and Washington
Environmental Council

s/ Vivian Wang  (email approval)
VIVIAN WANG, NYB No. 4748182
[Appearing Pro Hac Vice]
Attorney for Defendant-Intervenor Natural
Resources Defense Council, Inc.
40 West 20th Street
New York, NY 10011
(212) 727-4417 phone
(212) 727-1773 fax
vwang@nrdc.org

s/ Noah Long  (email approval)
NOAH LONG, CA No. 262571
[Appearing Pro Hac Vice]
Attorney for Defendant-Intervenor Natural
Resources Defense Council, Inc.
111 Sutter Street, 20th Floor
San Francisco, CA 94014
(415) 857-6100 phone
nlong@nrdc.org

STATE DEFENDANT AND
DEFENDANT-INTERVENORS' JOINT
MOTION FOR SUMMARY JUDGMENT
-- NO.  3:10-CV-05373-RJB

44

ATTORNEY GENERAL OF WASHINGTON
Government Operations Division
7141 Cleanwater Drive SW
PO Box 40108
Olympia, WA 98504-0108
(360) 586-3636

1

**CERTIFICATE OF SERVICE**

2

I hereby certify that on November 9, 2010, I electronically filed the foregoing with the

3

Clerk of the Court using the CM/ECF system which will send notification of such filing to the

4

following:

5

6              Amanda Goodin
               Kristen L. Boyles
7              Earthjustice
               agoodin@earthjustice.org
8              kboyles@earthjustice.org

9              Vivian H.W. Wang
               Noah Long
10             Natural Resources Defense Council, Inc
               vwang@nrdc.org
11             nlong@nrdc.org

12

13             Timothy M. Harris
               Building Industry Association of Washington
14             tharris@goodsteinlaw.com

15

I certify that on November 9, 2010, Greg Parker hand delivered a copy of such filing, to

16

the following last known address of the Plaintiff's counsel:

17             Jodi C. Slavik, WSBA No. 25088
               Building Industry Association of Washington
18             111 W. 21st Avenue
               PO Box 1909
19             Olympia, WA. 98507

20

I certify under penalty of perjury under the laws of the state of Washington that the

21

foregoing is true and correct.

22

23             DATED this 9th day of November, 2010, at Olympia, Washington.

24

25                        s/ Debbie Anderson
                          DEBBIE ANDERSON
26                        Legal Assistant

STATE DEFENDANT AND                45        ATTORNEY GENERAL OF WASHINGTON
DEFENDANT-INTERVENORS' JOINT                        Government Operations Division
MOTION FOR SUMMARY JUDGMENT                         7141 Cleanwater Drive SW
-- NO. 3:10-CV-05373-RJB                                 PO Box 40108
                                                    Olympia, WA 98504-0108
                                                       (360) 586-3636