1

2

3

4                      UNITED STATES DISTRICT COURT
                      WESTERN DISTRICT OF WASHINGTON
5                              AT TACOMA

6   BUILDING INDUSTRY ASSOCIATION
    OF WASHINGTON; AIR AMERICAN
7   INC.; AIREFCO INC.; BOA                    CASE NO. C09-5633RJB
    CONSTRUCTION CO.; COMPELTE
8   DESIGN INC.; CVH INC.; ENTEK CORP.;
    FAMILY HOME INVESTMENTS CORP.;
9   SADLER CONSTRUCTION INC.; TRACY    **ORDER ON STATE**
    CONSTRUCTION CO.,                  **DEFENDANT AND**
10                                     **DEFENDANT INTERVENORS'**
                                       **JOINT MOTION FOR**
11                Plaintiffs,          **SUMMARY JUDGMENT AND**
                                       **PLAINTIFFS' MOTION FOR**
12        v.                           **SUMMARY JUDGMENT**

13

14  WASHINGTON STATE BUILDING CODE
    COUNCIL,
15

16                Defendant,

17
    NW ENERGY COALITION, SIERRA
18  CLUB, WASHINGTON
    ENVIRONMENTAL COUNCIL and
19  NATURAL RESOURCES DEFENSE
    COUNCIL,
20

21                Defendants/Intervenors.

22        This matter comes before the Court on the Washington State Building Code Council

23  ("Council"), NW Energy Coalition, Sierra Club, Washington Environmental Council, and

24  Natural Resources Defense Council's (collectively "Defendants'") Joint Motion for Summary

25  Judgment (Dkt. 48) and Plaintiffs' Motion for Summary Judgment (Dkt. 54).  The Court has

26  considered the file, the pleadings filed regarding the motions and oral argument was heard on

27  February 3, 2011.

28

ORDER
Page 1

1

## I.   BACKGROUND FACTS AND PROCEDURAL HISTORY

2       Plaintiffs filed this case on May 25, 2010, seeking injunctive relief against enforcement of

3  certain newly enacted provisions of the Washington State Energy Code, Washington

4  Administrative Code ("WAC") 51-11-0900 ("Chapter 9").  Dkt. 1.  Plaintiffs contend that

5  Chapter 9 is preempted by the Energy Policy and Conservation Act, Pub. Law No. 94-163, 89

6  Stat. 871 (1975) ("EPCA") as amended both by the National Appliance Energy Conversation Act

7  of 1987 ("NAECA"), Public Law No. 100-12, and the Energy Policy Act of 1992 ("EPACT"),

8  Public Law No. 102-486, 42 U.S.C. § 6297.  *Id.*

9      **A.   BACKGROUND FACTS**

10         1.   <u>Federal Legislation</u>

11       "Congress enacted EPCA in 1975, in the aftermath of the oil embargo imposed against the

12  United States by certain countries in the years prior."  *Air Conditioning and Refrigeration*

13  *Institute v. Energy Resources Conservation and Development Com'n*, 410 F.3d 492, 498 (9th Cir.

14  2005).  The "EPCA was designed, in part, to reduce the United States domestic energy

15  consumption through the operation of specific voluntary and mandatory energy conservation

16  programs."  *Air Conditioning and Refrigeration Institute v. Energy Resources Conservation and*

17  *Development Com'n*, 410 F.3d 492, 498-99 (9th Cir. 2005)(*citing* S.Rep. No. 94-516, at 117

18  (1975), reprinted in 1975 U.S.C.C.A.N.1956, 1957).  In 1987, EPCA was amended by NAECA.

19  *Id.*  EPCA was amended again in 1992 by EPACT. *Id.,* at 500.  As a result of these amendments,

20  federal energy efficiency standards for residential appliances (including heating, ventilating, and

21  air conditioning equipment ("HVAC"), and water heaters) were established as part of EPCA's

22  energy conservation program.  *Id.* at 500, and 42 U.S.C. §§ 6292 and 6295.  In amending the

23  EPCA, Congress stated that it had a dual purpose: "to reduce the Nation's consumption of energy

24  and to reduce the regulatory and economic burdens on the appliance manufacturing industry

25  through the establishment of national energy conservation standards for major residential

26  appliances."  S. Rep. 100-6, at 1.

27       The EPCA also contains provisions which encourage states to adopt energy conservation

28

codes.  The EPCA requires that "[w]henever CABO Model Energy Code, 1992, (or any successor of such code) is revised," the Department of Energy is required to "determine whether such revision would improve energy efficiency in residential buildings."  42 U.S.C. § 6833 (a)(5)(A). If the Department of Energy makes an affirmative determination, the EPCA provides that,

> [E]ach State shall, not later than 2 years after the date of the publication of such determination, certify that it has reviewed the provisions of its residential building code regarding energy efficiency and made a determination as to whether it is appropriate for such State to revise such residential building code provisions to meet or exceed the revised code for which the Secretary made such determination.

42 U.S.C. § 6833 (a)(5)(B).  Further, the EPCA provides grants to states "to implement the requirements of this section, and to improve and implement State residential and commercial building energy efficiency codes, including increasing and verifying compliance with such codes."  42 U.S.C. § 6833 (e).

### 2.   Washington State's Legislation

Accordingly, the Washington legislature has adopted a building energy code.  RCW 19.27A.020.  In a recent amendment to the Washington building energy code,

> The legislature [has found] that energy efficiency is the cheapest, quickest, and cleanest way to meet rising energy needs, confront climate change, and boost [Washington's] economy.  More than thirty percent of Washington's greenhouse gas emissions come from energy use in buildings. Making homes, businesses, and public institutions more energy efficient will save money, create good local jobs, enhance energy security, reduce pollution that causes global warming, and speed economic recovery while reducing the need to invest in costly new generation. Washington can spur its economy and assert its regional and national clean energy leadership by putting efficiency first. Washington can accomplish this by: Promoting super efficient, low-energy use building codes; requiring disclosure of buildings' energy use to prospective buyers; making public buildings models of energy efficiency; financing energy saving upgrades to existing buildings; and reducing utility bills for low-income households.

RCW 19.27A.130.  Washington's building code, including the energy conservation provisions, are promulgated by the Washington State Building Code Council ("Council").  RCW 19.27.070 and 19.27.074.  The Council is made up of several different stakeholders.  RCW 19.27.070.  The Council must review the energy provisions of the building code every three years, and "may amend any provisions of the Washington state energy code to increase the energy efficiency of newly constructed residential buildings."  RCW 19.27A.045.  Further, "the residential and

nonresidential construction permitted under the 2031 state energy code must achieve a seventy percent reduction in annual net energy consumption, using the adopted 2006 Washington state energy code as a baseline." RCW 19.27A.160 (1). Accordingly, the Council must adopt energy codes that "incrementally move toward achieving the seventy percent reduction in annual net energy consumption" from 2013 through 2031. RCW 19.27A.160 (2). RCW 19.27A.160 (2) further provides that the Council may defer implementation of portions of the updated code where it determines that "economic, technological or process factors would significantly impede" adoption and/or compliance. *Id.*

      3.    <u>Washington's 2006 Building Energy Code</u>

Washington's 2006 building energy code provided:

> This Code sets forth minimum requirements for the design of new buildings and structures that provide facilities or shelter for residential occupancies by regulating their exterior envelopes and the selections of their HVAC, service water heating systems, and equipment for efficient use and conservation of energy. Buildings shall be designed to comply with the requirements of either Chapter 4, 5 or 6 of this Code.

WAC 51-11-101.3. Washington's 2006 building energy code involved a two step process. Dkt. 48-1, at 4. As a first step, a builder would apply "general requirements for insulation, moisture control, air leakage control, mechanical systems including duct sealing, water heating and lighting." Dkt. 48-1, at 5. "In the second step, the builder could select from three compliance pathways: a system analysis performance pathway (Chapter 4); a building envelope tradeoff performance pathway (Chapter 5); or a prescriptive requirements pathway (Chapter 6)." Dkt. 48-1, at 5.

To comply with the Chapter 4, Building Design by Systems Analysis, builders use a computer simulation or "alternative calculation" procedure to show that the anticipated annual energy use of a proposed design uses less energy than a code-defined target home. WAC 51-11-401-402. According to Defendants, under this chapter, builders may trade off energy efficiency of any of the building components: the building's envelope, heating and cooling systems, and other energy consuming devices, so long as the target energy use goal is met. Dkt. 48-9, at 8.

If a builder chooses to use the Chapter 5 pathway, they "are allowed to trade off the

thermal efficiency of building envelope components so heat loss is less than or equal to target values." Dkt. 48-9, at 9.  (*citing* WAC 51-11-502.1-502.2).  The efficiency of a building's envelope or "air tightness" can be improved "by increasing the levels of insulation in the walls, ceiling and floors, reducing the heat loss through the use of high performance windows, and/or limiting the amount of heated air that "leaks" out of the home."  Dkt. 48-9, at 7.  According to Defendants, "only the efficiency components of the building's envelope may be traded under this pathway; the efficiency of the other components of the home (such as the heating system) must meet prescriptive minimum standards."  Dkt. 48-9, at 9.  Defendants offer the example of: increasing attic insulation traded off against a reduction in wall insulation.  Dkt. 48.  Under Chapter 5 though, a builder may not trade off the efficiencies of the heating and cooling systems or other energy consuming devises.  Dkt. 48.

Under Chapter 6, "builders must meet minimum prescriptive standards for the efficiency of each listed component or system in the home; no trade-offs are permitted."   Dkt. 48-9, at 9 (*citing* WAC 51-11-601).

The 2006 code did not have any requirements that exceeded the federal minimum standards under EPCA.  Dkt. 48-1, at 5.

4.   Washington's 2009 Building Energy Code

In an effort to comply with the legislative directives, the Council promulgated amendments to Washington's building energy code in 2009.  WAC 51-11.  Under these new amendments, a fifteen percent reduction in annual net energy consumption is required in new construction.  WAC 51-11.

The 2009 code keeps the multi-step process that is in the 2006 code.  WAC 51-11-101.3 "In the 2009 building energy code, builders still comply with the general installation requirements in Chapter 5 then choose from the three pathways:  the Chapter 4 systems analysis performance pathway, the Chapter 5 building envelope tradeoff performance pathway, or the Chapter 6 prescriptive pathway."  Dkt. 48-1, at 5.  The 2009 code also requires that buildings be designed to comply with "the additional energy efficiency requirements included in Chapter 9 of this Code."

WAC 51-11-101.3.

According to Defendants, the fifteen percent reduction required by the legislature, comes from two sources. Dkt. 48-1, at 5. "Chapters 4, 5, and 6 were modified to reduce energy usage in buildings constructed under each pathway, by approximately 7% over the 2006 code." Dkt. 48-1, at 5. Plaintiffs are not challenging these provisions and these provisions do not appear to contain standards that exceed the federal standards set under EPCA. Defendants contend that the remaining 8% of energy reduction, for a total of 15%, comes from the newly added Chapter 9 requirements. Dkt. 48-1, at 5. It is Chapter 9 provisions that Plaintiffs challenge here. Dkt. 1.

Under the 2009 Code, if a builder chooses to use the Chapter 4 pathway, the WAC provides that they shall meet Chapter 9's requirements by "demonstrating that the proposed building energy use is 8% less than the target building energy use." WAC 51-11-402.2 and 901.

Chapter 9 requires that builders who use either the Chapter 5 or 6 pathway "develop a credit from Table 9-1." WAC 51-11-901. Table 9-1 contains 13 options which purport to provide builders with various choices to secure sufficient credits to satisfy the code's minimum requirements. *Id.* Each option is assigned a credit value. *Id.* Table 9-1, specifically provides:

| Option | Description | Credit(s) |
|---|---|---|
| 1a | HIGH EFFICIENCY HVAC EQUIPMENT 1: Gas, propane or oil-fired furnace or boiler with minimum AFUE of 92%, or Air-source heat pump with minimum HSPF of 8.5. | 1.0 |
| 1b | HIGH EFFICIENCY HVAC EQUIPMENT 2: Closed-loop ground source heat pump; with a minimum COP of 3.3 | 2.0 |
| 1c | HIGH EFFICIENCY HVAC EQUIPMENT 3: DUCTLESS SPLIT SYSTEM HEAT PUMPS, ZONAL CONTROL: In home where the primary space heating system is zonal electric heating, a ductless heat pump system shall be installed and provide heating to at least one zone of the housing unit. | 1.0 |

| 2 | HIGH EFFICIENCY HVAC DISTRIBUTION SYSTEM: All heating and cooling system components installed inside the conditioned space. All combustion equipment shall be direct vent or sealed combustion. Locating system components in conditioned crawl spaces is not permitted under this option. Electric resistance heat is not permitted under this option. Direct combustion heating equipment with AFUE less than 80% is not permitted under this option. | 1.0 |
|---|---|---|
| 3a | EFFICIENT BUILDING ENVELOPE 1: Prescriptive compliance is based on Table 6-1, Option III with the following modifications: Window U = 0.28 floor R-38, slab on grade R-10 full, below grade slab R-10 full.  Or Component performance compliance: reduce the target UA from Table 5-1 by 5%, as determined using EQUATION 1. | 0.5 |
| 3b | EFFICIENT BUILDING ENVELOPE 2: Prescriptive compliance is based on Table 6-1, Option III with the following modifications: Window U = 0.25 and wall R-21 plus R-4 and R-38 floor, slab on grade R-10 full, below grade slab R-10 full, and R-21 plus R-5 below grade basement walls. Or Component performance compliance: reduce the target UA from Table 5.1 by 15%, as determined using EQUATION 1. | 1.0 |
| 3c | SUPER-EFFICIENT BUILDING ENVELOPE 3: Prescriptive compliance is based on Table 6-1, Option III with the following modifications: Window U = 0.22 and wall R-21 plus R-12 and R-38 floor, slab on grade R-10 full, below grade slab R-10 full and R-21 plus R-12 below grade basement walls and R-49 advanced ceiling and vault. or Component performance compliance: Reduce the Target UA from Table 5.1 by 30%, as determined using EQUATION 1. | 2.0 |
| 4a | AIR LEAKAGE CONTROL AND EFFICIENT VENTILATION: Envelope leakage reduced to SLA of 0.00020 building envelope tightness shall be considered acceptable when tested air leakage is less than specific leakage area of 0.00020 when tested with a blower door at a pressure difference of 50 PA. Testing shall occur after rough in and after installation of penetrations of the building envelope, including penetrations for utilities, plumbing, electrical, ventilation, and combustion appliances. and All whole house ventilation requirements as determined by Section M1508 of the Washington State Residential Code shall be met with a heat recovery ventilation system in accordance with Section M1508.7 of that Code. | 0.5 |

| 4b | ADDITIONAL AIR LEAKAGE CONTROL AND EFFICIENT VENTILATION: Envelope leakage reduced to SLA of 0.00015 building envelope tightness shall be considered acceptable when tested air leakage is less than specific leakage area of 0.00015 when tested with a blower door at a pressure difference of 50 PA. Testing shall occur after rough in and after installation of penetrations of the building envelope, including penetrations for utilities, plumbing, electrical, ventilation, and combustion appliances. and All whole house ventilation requirements as determined by Section M1508 of the Washington State Residential Code shall be met with a heat recovery ventilation system in accordance with Section M1508.7 of that Code. | 1.0 |
| 5a | EFFICIENT WATER HEATING: Water heating system shall include one of the following: Gas, propane or oil water heater with a minimum EF of 0.62. or Electric Water Heater with a minimum EF of 0.93. and for both cases All showerhead and kitchen sink faucets installed in the house shall meet be rated at 1.75 GPM or less. All other lavatory faucets shall be rated at 1.0 GPM or less. | 0.5 |
| 5b | HIGH EFFICIENCY WATER HEATING: Water heating system shall include one of the following: Gas, propane or oil water heater with a minimum EF of 0.82. or Solar water heating supplementing a minimum standard water heater. Solar water heating will provide a rated minimum savings of 85 therms or 2000 kWh based on the Solar Rating and Certification Corporation (SRCC) Annual Performance of OG-300 Certified Solar Water Heating Systems. or Electric heat pump water heater with a minimum EF of 2.0. | 1.5 |
| 6 | SMALL DWELLING UNIT 1:  Dwelling units less than 1500 square feet in floor area with less than 300 square feet of window + door area. Additions to existing building that are less than 750 square feet of heated floor area. | 1.0 |
| 7 | LARGE DWELLING UNIT 1:  Dwelling units exceeding 5000 square feet of floor area shall be assessed a deduction for purposes of complying with Section 901 of this Code. | -1.0 |
| 8 | RENEWABLE ELECTRIC ENERGY: For each 1200 kWh of electrical generation provided annually by on-site wind or solar equipment a 0.5 credit shall be allowed, up to 3 credits. Generation shall be calculated as follows: For solar electric systems, the design shall be demonstrated to meet this requirement using the National Renewable Energy Laboratory calculator PVWATTs. Documentation noting solar access shall be included on the plans. For wind generation projects designs shall document annual power generation based on the following factors: The wind turbine power curve; average annual wind speed at the site; frequency distribution of the wind speed at the site and height of the tower. | 0.5 |

WAC 51-11-901 (*footnotes excluded*).  Defendants state that seven of the options were "designed to address the efficiency of a building's shell (Options 3a, 3b, 3c, 4a, 4b, 6 and 7), four options designed to address the efficiency of a home's heating equipment (Options 1a, 1b, 1c and 2), and

two options designed to address the efficiency of other energy consuming devices in a home (Options 5a and 5b)."  Dkt. 48-9, at 10.

Chapter 9 was originally intended to be effective on July 1, 2010 (Dkt. 1), but the Council delayed the new provisions' effective date to January 1, 2011 (Dkt. 22).

## B.    PROCEDURAL HISTORY

On May 25, 2010, Plaintiffs' filed a Complaint, claiming that Chapter 9 violates 42 U.S.C. § 6297 by imposing energy efficiency standards higher than those set by the federal government. Dkt. 1, at 8.  Plaintiffs assert that Chapter 9 is preempted by 42 U.S.C. § 6297 and violates the interstate commerce clause U.S. Constitution art. 1, section 8, cl. 3.  Dkt. 1, at 14.  Plaintiffs seek "a declaration and order finding Defendants in violation of 42 U.S.C. § 6297 and the Supremacy Clause" of the United States Constitution and injunctive relief prohibiting enforcement of "the challenged sections of the regulation."  Dkt. 1, at 14.  Plaintiffs further seek attorneys' fees, costs and expenses.  Dkt. 1, at 14.

On July 29, 2010, NW Energy Coalition, Sierra Club, Washington Environmental Council, and Natural Resources Defense Council's Motion to Intervene was granted.  Dkt. 34.

## C.    PENDING MOTIONS

Defendants and Interveners filed a joint summary judgment motion, seeking dismissal of all Plaintiff's claims.  Dkts. 48 and 58.  Defendants argue that Plaintiffs' claims should be dismissed because the EPCA does not preempt Chapter 9.  *Id.* They argue that Chapter 9 meets the EPCA's seven factor preemption exemption test.  *Id.*  Defendants argue that:  1) the Washington Code offers builders numerous options to meet the overall 15% reduction and the 8% energy efficiency requirement, 2) the Washington Code does not expressly or effectively require efficiency levels beyond the federal minimum standards, 3) the Washington Code assigns credits that are even-handed and not unfairly weighted, 4) the Code does not require the use of single baseline building design, 5) the code offers an evenly balanced range of options, 6) energy savings goal of the Washington Code is measured in energy use, and 7) the Code uses federal test procedures to measure energy use.  *Id.*  Defendants also argue that the EPCA does not preempt

1    Chapter 9 because congress intended to exempt performance based building codes from

2    preemption under EPCA. *Id.* Defendants also move to dismiss Plaintiffs' claims regarding the

3    commerce clause. *Id.*

4         Plaintiffs move for summary judgment and respond to Defendant's motion. Dkts. 54 and

5    59. Plaintiffs argue that Defendants are in error when they assert that Plaintiffs must show that

6    Chapter 9 is not constitutional under "no circumstances." Dkt. 54. Plaintiffs argue that Chapter 9

7    "concerns" energy efficiency, energy use or water use. Dkt. 54. (Defendants do not contest this.

8    Dkt. 48.) Plaintiffs argue that Chapter 9 is preempted by EPCA because it does not meet four of

9    the seven factors set forth in EPCA's exemption from preemption provision. Dkt. 54. In their

10   Reply, Plaintiffs emphasize that Chapter 9 fails to meet factor (C) of the EPCA's exemption

11   provision - 42 U.S.C. § 6297 (f)(3)(C). Dkt. 59.

12                                    **II.    DISCUSSION**

13   **A.     SUMMARY JUDGMENT - STANDARD**

14        Summary judgment is proper only if the pleadings, depositions, answers to interrogatories,

15   and admissions on file, together with the affidavits, if any, show that there is no genuine issue as

16   to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ.

17   P. 56(c). The moving party is entitled to judgment as a matter of law when the nonmoving party

18   fails to make a sufficient showing on an essential element of a claim in the case on which the

19   nonmoving party has the burden of proof. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1985).

20   There is no genuine issue of fact for trial where the record, taken as a whole, could not lead a

21   rational trier of fact to find for the non moving party. *Matsushita Elec. Indus. Co. v. Zenith Radio*

22   *Corp.*, 475 U.S. 574, 586 (1986) (nonmoving party must present specific, significant probative

23   evidence, not simply "some metaphysical doubt."); *See also* Fed. R. Civ. P. 56(e). Conversely, a

24   genuine dispute over a material fact exists if there is sufficient evidence supporting the claimed

25   factual dispute, requiring a judge or jury to resolve the differing versions of the truth. *Anderson*

26   *v. Liberty Lobby, Inc.*, 477 U.S. 242, 253 (1986); *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors*

27   *Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987).

28

1    The determination of the existence of a material fact is often a close question.  The court

2    must consider the substantive evidentiary burden that the nonmoving party must meet at trial –

3    e.g., a preponderance of the evidence in most civil cases.  *Anderson*, 477 U.S. at 254; *T.W. Elec.*

4    *Serv., Inc.*, 809 F.2d at 630.  The court must resolve any factual issues of controversy in favor of

5    the nonmoving party only when the facts specifically attested by that party contradict facts

6    specifically attested by the moving party.  The nonmoving party may not merely state that it will

7    discredit the moving party's evidence at trial, in the hopes that evidence can be developed at trial

8    to support the claim.  *T.W. Elec. Serv., Inc.*, 809 F.2d at 630 (relying on *Anderson, supra)*.

9    Conclusory, non specific statements in affidavits are not sufficient, and missing facts will not be

10   presumed.  *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888-89 (1990).

11       **B.       STANDARD FOR THIS CONSTITUTIONAL CHALLENGE**

12       Defendants argue that Plaintiffs are making a facial constitutional challenge to Chapter 9.

13   Dkt. 48.  In support of their argument, Defendants cite *U.S. v. Salerno*, 481 U.S. 739, 745 (1987),

14   which held that to sustain a facial attack to a state law or regulation, plaintiffs must "establish that

15   no set of circumstances exists under which the [law or regulation] would be valid."  Dkt. 48

16       Plaintiffs argue that Defendants' position that they have to show that "no set of

17   circumstances exists" under which Chapter 9 is valid is not the proper standard.  Dkt. 54.

18   Plaintiffs argue that all they need do is show that Chapter 9 does not meet the statutory

19   requirements for the exemption laid out in the EPCA.  *Id.*  Plaintiffs do not cite any authority for

20   their position.

21       Plaintiffs have not asserted that they have been denied a building permit, or that any other

22   such government action has occurred.  They argue that Chapter 9 is *per se* preempted.  Dkt. 1.

23   They move for an order enjoining enforcement of all of Chapter 9.  Dkt. 1.  As such, they raise a

24   facial constitutional challenge to Chapter 9.  *See Anderson v. Edwards,* 514 U.S. 1291, 1298, n.6

25   (1995)(noting that plaintiffs challenged the local regulation on its face by seeking to enjoin its

26   enforcement altogether).  Accordingly, in a facial challenge to a legislative act, "the challenger

27   must establish that no set of circumstances exists under which the Act would be valid."  *Sprint*

28

ORDER
Page 11

*Telephony PCS, L.P. v. County of San Diego*, 543 F.3d 571, 579 (9th Cir. 2008)(*citing United States v. Salerno*, 481 U.S. 739 (1987)).  To the extent that Plaintiffs argue that *Salerno* is no longer good law, the Ninth Circuit recently noted that "the Supreme Court and this court have called into question the continuing validity of the *Salerno* rule in the context of First Amendment challenges.  In cases involving federal preemption of a local statute, however, the rule applies with full force."  *Id.* at 579, n. 3.  To defeat Plaintiffs' facial challenge, the Defendants need "merely to identify a possible set" of conditions not in conflict with federal law.  *California Coastal Com'n v. Granite Rock Co.*, 480 U.S. 572, 593 (1987).

### C.    PREEMPTION

"Congress, as well as federal agencies, may expressly or impliedly preempt state law." *National Meat Ass'n v. Brown,* 599 F.3d 1093, 1097 (9th Cir. 2010)(*internal citations omitted*). "Preemption can occur in one of three ways:  express preemption by statute, occupation of the field, or conflict between state and federal regulation."  *Air Conditioning and Refrigeration Institute v. Energy Resources Conservation and Development Com'n*, 410 F.3d 492, 495 (9th Cir. 2005)(*internal citations omitted*).  Parties agree that the case here involves issues of express preemption.  Dkts. 48 and 54.

In order to determine whether Chapter 9 is preempted by the EPCA, the court must first "identify the domain expressly preempted by that language."  *Air Conditioning and Refrigeration Institute v. Energy Resources Conservation and Development Com'n*, 410 F.3d 492, 495 (9th Cir. 2005)(*internal citations omitted*).  Inquiry into the scope of a preemption clause is guided by two presumptions.  *Id*.  First is the assumption that Congress did not intend to displace state law.  *Id*. Second is the assumption that the "centerpiece of any preemption analysis is congressional purpose."  *Pacific Gas and Elec. Co. v. California, ex rel, et al.*, 350 F.3d 932, 942 (9th Cir. 2003)(*internal citations omitted*).

In ascertaining congressional purpose, examination of the federal "statute's language, structure, subject matter, context, and history" are factors that "typically help courts determine a statute's objectives and thereby illuminate its text."  *Pacific Gas*., at 943.  Since preemption

1   claims turn on Congress's intent, the analysis begins, as always when doing an exercise of

2   statutory construction, "with the text of the provision in question." *Air Conditioning and*

3   *Refrigeration Institute,* at 495.  This analysis applies to cases where the entire state statute is

4   alleged to be preempted, as well as to allegations that only particular claims within that structure

5   are preempted.  *Medtronic, Inc. v. Lohr*, 518 U.S. 470, 486 (1996).

6        The EPCA's express preemption clause prohibits any "State regulation concerning the

7   energy efficiency, energy use, or water use" of a "covered product."  42 U.S.C. § 6297.  A

8   "covered product" includes refrigerators, 42 U.S.C. § 6295(b); air conditioners,42 U.S.C. § 6295

9   (c); central air conditioners and heat pumps, 42 U.S.C. § 6295(d); water heaters, pool heaters and

10  direct heating equipment, 42 U.S.C. § 6295(e); furnaces and boilers, 42 U.S.C. § 6295(f);

11  dishwashers, clothes washers, clothes dryers, and fluorescent lamp ballasts, 42 U.S.C. § 6295(g);

12  kitchen ranges and ovens, 42 U.S.C. § 6295(h); lamps, 42 U.S.C. § 6295(i); and shower heads and

13  faucets, 42 U.S.C. § 6295(j).

14       The EPCA's preemption clause contains several exceptions, one of which is at issue here.

15  Under 42 U.S.C. § 6297 (f)(3), "a regulation or other requirement contained in a State or local

16  building code for new construction concerning the energy efficiency or energy use of such

17  covered product is not superseded" by the EPCA's general preemption provision if the code

18  complies with the following seven requirements:

19          (A) The code permits a builder to meet an energy consumption or conservation
            objective for a building by selecting items whose combined energy efficiencies
20          meet the objective.
            (B) The code does not require that the covered product have an energy efficiency
21          exceeding the applicable energy conservation standard established in or prescribed
            under section 6295 of this title, except that the required efficiency may exceed
22          such standard up to the level required by a regulation of that State for which the
            Secretary has issued a rule granting a waiver under subsection (d) of this section.
23          (C) The credit to the energy consumption or conservation objective allowed by the
            code for installing covered products having energy efficiencies exceeding such
24          energy conservation standard established in or prescribed under section 6295 of
            this title or the efficiency level required in a State regulation referred to in
25          subparagraph (B) is on a one-for-one equivalent energy use or equivalent cost
            basis.
26          (D) If the code uses one or more baseline building designs against which all
            submitted building designs are to be evaluated and such baseline building designs
27          contain a covered product subject to an energy conservation standard established
            in or prescribed under section 6295 of this title, the baseline building designs are

28

based on the efficiency level for such covered product which meets but does not exceed such standard or the efficiency level required by a regulation of that State for which the Secretary has issued a rule granting a waiver under subsection (d) of this section.

(E) If the code sets forth one or more optional combinations of items which meet the energy consumption or conservation objective, for every combination which includes a covered product the efficiency of which exceeds either standard or level referred to in subparagraph (D), there also shall be at least one combination which includes such covered product the efficiency of which does not exceed such standard or level by more than 5 percent, except that at least one combination shall include such covered product the efficiency of which meets but does not exceed such standard.

(F) The energy consumption or conservation objective is specified in terms of an estimated total consumption of energy (which may be calculated from energy loss- or gain-based codes) utilizing an equivalent amount of energy (which may be specified in units of energy or its equivalent cost).

(G) The estimated energy use of any covered product permitted or required in the code, or used in calculating the objective, is determined using the applicable test procedures prescribed under section 6293 of this title, except that the State may permit the estimated energy use calculation to be adjusted to reflect the conditions of the areas where the code is being applied if such adjustment is based on the use of the applicable test procedures prescribed under section 6293 of this title or other technically accurate documented procedure.

42 U.S.C. § 6297 (f)(3)(A)-(G).

Plaintiffs state that factors (A), (D), and (G), concerning baseline standards, selections of options that meet an energy efficiency objective and testing procedures are not at issue.  Dkt. 54, at 14.  The remaining four factors:  (B), (C), (E), and (F) will be examined below.

1.   Factor (B):  In Order to Not Be Preempted, the Code Can Not Require that Covered Products Have an Energy Efficiency Exceeding Federal Energy Conservation Standards as the Only Means to Comply with the Code

Factor (B)specifically provides:

The code does not require that the covered product have an energy efficiency exceeding the applicable energy conservation standard established in or prescribed under section 6295 of this title, except that the required efficiency may exceed such standard up to the level required by a regulation of that State for which the Secretary has issued a rule granting a waiver under subsection (d) of this section.

42 U.S.C. § 6297 (f)(3)(B).

The Washington Code meets factor (B)'s requirement that the Code not require use of covered products exceeding federal efficiency standards as the only way to comply with the code.

Although some of Chapter 9's options: (1a, 2, 5a, and 5b) explicitly require products with higher

ORDER
Page 14

efficiency than is mandated by the federal government, some of the options in Chapter 9 do not use covered products.  Options 3a, "Efficient Building Envelope 1," 3b "Efficient Building Envelope 2," and 3c "Super -Efficient Building Envelope 3," do not require the use of any covered products, for example.  Option 4a, "Air Leakage Control and Efficient Ventilation," does not require use of covered products.

Plaintiffs raise various complaints to each of the options.  Plaintiffs complain that Option 4a is only worth one half a point, and so would have to be combined with another option to meet the Code requirements.  Dkt. 54.  Plaintiffs argue that Options 3a-c, for example, are not always geographically viable and many manufacturers do not offer the products contemplated in those options.  Dkt. 54.  Plaintiffs' arguments regarding the feasibility of certain options under "some circumstances" illustrates the central problem with the nature of their challenge to Chapter 9.  They must show that under no circumstances is the Code constitutional - i.e. that under no circumstances does the Code meet this factor of the test Congress established to gain an exception to preemption.  *Sprint Telephony,* at 570.  Plaintiffs have failed to show that there are issues of fact as to factor (B).  They have not shown that the Washington Code requires use of products with higher efficiency than mandated by federal standards as the only way to comply with the Code.

Plaintiffs further argue that the Code "functionally" requires that they use products which exceed federal efficiency standards because the other options are often more expensive.  Dkt. 54.  Plaintiffs combine their arguments for factor (E) here.  *Id.*  As will be more fully explained below in Section II. C. 3., which addresses factor (E), Plaintiffs allegations, without more, are insufficient to show that the Code "functionally" or "effectively" requires use of products that exceed federal efficiency standards.

Plaintiff cites to an unpublished decision of an order granting a preliminary injunction in a New Mexico case, *Air Conditioning Heating and Refrigeration Inst. v. City of Alburquerque, No. 08-633 MV/RLP,* 2008 WL 5586316 (D.N.M. Oct. 3, 2008).  Dkt. 54.  In that case, the District Court found, at that stage, that the plaintiff had shown that Alburquerque's code's "performance-

based alternatives, as a practical matter, cannot be met with products that meet, but do not exceed" the federal standards. *Id.,* at 9. Plaintiffs here have not made any such showing. Further, there appear to be substantial differences in the Alburquerque code and Washington's code. Plaintiffs' motion for summary judgment on this factor should be denied, and Defendants' motion on this factor should be granted.

2.     Factor (C):  In Order not to Be Preempted, Credits in the Code Are on a One-for-One Basis

Factor (C) requires:

Credit to the energy consumption or conservation objective allowed by the Code for installing covered products having energy efficiencies exceeding federal standards or the efficiency level required in a state regulation referred to in Subparagraph (B) is on a one-for-one equivalent energy use or equivalent cost basis.

42 U.S.C. § 6297 (f)(3)(B). In order to avoid preemption, this factor requires that building codes which establish credits for various conservation measures, provide "to the greatest degree possible, one for one equivalency between energy efficiency of these differing measures and the credits provided for such efficiency." S. Rep. 100-6, at 11.

Chapter 9's credits are sufficiently awarded on a one-for-one equivalent energy use basis to satisfy the requirements of factor (C) of EPCA's preemption exemption test. According to Defendants, the credits assigned to each option in Chapter 9 were "based on models of the energy savings that would result from the use of each option in four different prototype homes in two different climate zones." Dkt. 48-9. The Council used Dave Baylon at Ecotype, Inc., to perform the analysis using a computer simulation model called SEEM. *Id.* Defendants provide the Declaration of Thomas Eckman, the manager for the Conservation Resources at the Northwest Power and Conservation Council ("NWPCC") and chair of the Regional Technical Forum ("RTF"), which was established by the NWPCC at the request of Congress "to develop standardized methods for verifying conservation savings." Dkt. 48-9, at 2. Mr. Eckman states that the computer simulations are used because "it is not practical to build homes with every potential combination of energy efficiency measures being considered for code adoption in order to test their effect on energy use." Dkt. 48-9, at 13. Mr. Eckman states that the SEEM

ORDER
Page 16

methodology used here is the "industry standard for analyzing building code energy efficiency savings." *Id.* According to Mr. Eckman, "the savings estimates for the 2009 building energy code were developed by simulating the impact on energy use of each of the efficiency options under consideration across a range of home sizes and designs that are representative of those being constructed across Washington." Dkt. 48-9, at 13. Mr. Eckman further states that the credits of each of the options is weighed based on the energy use saved by each option on average. Dkt. 48-9, at 20.

Plaintiffs argue that Chapter 9 is preempted under factor (C), claiming that the credits in Chapter 9 are not, in fact, one to one, and claiming that there is "a wide disparity of costs associated with complying with Chapter 9." Dkt. 54. Each of these arguments will be addressed below.

        a.    *Credits Awarded Based on One-To-One Equivalent Energy Use*

As to Plaintiffs' first argument, that the credits are not awarded in Chapter 9 on one-to-one equivalent energy use basis, Plaintiffs argue that there is a wide disparity in the distribution of credits. Dkt. 54. Plaintiffs challenge the overall efficiency savings Defendants' engineers state that each option attains. Dkt. 54. They further challenge how the options' credits are awarded. *Id.* Plaintiffs point to the Declaration of Ted Clifton, who states that he has more than 45 years experience in the construction industry, 20 of which as a registered general contractor. Dkt. 54-1, at 2. In challenging the overall efficiency savings that Defendants' engineers state that each of the options attains, Mr. Clifton uses the following example:

> Option 5a provides little measurable benefit to energy efficiency. Water heating is only about 17% of the average energy use of a home. Dkt. 54-1, at 6. Improving the efficiency of a gas water heater ("WH") from 58% (standard) to 62% (option 5a) improves the WH efficiency by about 7%, but 7% of 17% is only 1.19%! The low flow fixtures have very little impact, because most often the same amount of water is used, it just takes longer to get it out of the faucet. The only exception is low-flow shower heads, which do provide some benefit, but showers only account for about 15% of total hot water use, so if you save 30% of the water from showering, (1.75 gpm vs 2.25 gpm) you are only saving another .765% of total home energy, so the total energy saved for this option is less than 2%, or about 4% per point, since the option is only worth ½ point.

Dkt. 54-1. Mr. Clifton states,

Option 4a seems to imply that savings are available with the use of a Heat Recovery Ventilation ("HRV") in climate zone 1. This is just not true. The air leakage control is what provides the savings. HRVs, have value in the eastern part of the state (climate zone 2) but not in Western Washington (climate zone 1). They are just a way to spend more money on equipment and installation, with no measurable benefit in energy efficiency.

Dkt. 54-1. Mr. Clifton further asserts,

The Ecotope tables set forth as an attachment to the Declaration of Tim Nogler show rather clearly there is no one-for-one equivalent energy use for installing covered products having energy efficienices exceeding federal energy consumption standards. For example, in Table 1, they show the Ground Source heat pump (option 1b) as offering 6% improvement per point, while they claim the 4a Air Leakage Control & HRV to offer 10% per point, more than a 40% deviation between the two! Further more they have no data to support the conclusions they have drawn for options 6 and 7. Energy savings will vary widely depending on the size of the house. Also, the savings will vary widely with regard to water usage depending on the size of the house and number of residents, making the reported energy savings under options 5a and 5b questionable. The assumptions leading to the projected energy savings for those options is flawed.

Dkt. 54-1, at 8.

Plaintiffs have failed to carry their burden to show that credits awarded in Chapter 9 are not based on a one-for-one equivalent energy use. First, Plaintiffs have failed to show that Mr. Clifton is qualified to render opinions in energy efficiency modeling. "A district court's ruling on a motion for summary judgment may only be based on admissible evidence." *In re Oracle Corp. Securities Litigation*, 627 F.3d 376, 385 (9th Cir. 2010)(*citing Beyene v. Coleman Sec. Servs., Inc*., 854 F.2d 1179, 1181 (9th Cir.1988)). Under Federal Rule of Evidence 702 and the Supreme Court's decision in *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993),

If expert testimony will assist the trier of fact to understand the evidence or to determine a fact in issue, such testimony is admissible so long as (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

*U.S. v. Redlightning*, 624 F.3d 1090, 1111 (9th Cir. 2010)(*internal citations omitted*). Plaintiffs here have not shown that any of Mr. Clifton's opinions are based on "sufficient facts or data." *Id.* They have not shown that his opinions are the "product of reliable principles and methods." *Id.* Nor has there been a showing that Mr. Clifton applied "the principles and methods reliably to the facts of this case." *Id.* Mr. Clifton's testimony on the overall efficiency savings that each of

1   Chapter 9's options attains and whether the credits awarded in Chapter 9 are based on a

2   one-for-one equivalent energy use, is neither reliable or relevant.  *Id.* (*citing See United States v.*

3   *Freeman*, 498 F.3d 893, 901 (9th Cir.2007).

4         Conversely, Defendants have sufficiently show that the reasoning and methodology

5   underlying their engineering report and expert testimony is "scientifically valid," and is properly

6   applied here.  Defendants have shown that the energy savings calculated by the SEEM software is

7   accurate.  Defendants have shown that the credits awarded in Chapter 9 are sufficiently on a

8   one-for-one equivalent energy use basis.

9         While there is some disparity in credits, the EPCA does not require identical energy

10  savings.  Congress specifically acknowledged that identical energy savings would not be possible.

11  S. Rep. 100-6, at 10.   Allowing for some variation is consistent with consistent with Congress's

12  stated purposes enacting the preemption clause of the EPAC.  S. Rep. 100-6, at 9-11.  Plaintiffs

13  have not shown that the variation is so great that the Code does not meet the requirements of

14  factor (C).  Plaintiffs' motion for summary judgment on factor (C) should be denied.  Defendants'

15  motion for summary judgment on this factor should be granted.

16                          b.    *Cost*

17        Plaintiffs also argue that the cheapest way to comply with Chapter 9 "is to simply install

18  high efficiency HVAC equipment under Option 1a.   In other words the most cost effective route

19  to comply with chapter 9 is to install a product that exceeds federal standards."  Dkt. 54, at 22

20  (*citations omitted*).  They argue that the statutory language "equivalent cost basis" expressly calls

21  for a consideration of financial costs.  Dkt. 59, at 10.

22        The phrase "equivalent cost basis" in factor (C) is not defined in the statute, and is

23  ambiguous.  Turning to the legislative history, Congress provides some insight into its' intentions

24  when it used the phrase in discussion of the amendment which changed the word "basis" to

25  "equivalent cost basis."  Congress explains that:

26        Section 327(f)(3)(C) [codified as 42 U.S.C. § 6297 (f)(3)(C)] requires that a credit
          to the energy consumption or conservation objective allowed by the code, for
27        installing covered products having energy efficiencies exceeding the standard, be
          given in terms of energy use.  The amendment is necessary because some State

28

energy codes are based on energy costs, and not on an energy use. This amendment clarifies that such credits may also be based on equivalent energy cost. For example, Oregon's code relies on total life-cycle costs for building construction and operation. Thus, the legislation, as amended, would allow tradeoffs between components based either on their energy usage or equivalent costs; including the appliances' initial purchase cost and operating costs, but excluding subsidies and rebates. This construction parallels section 327(f)(3)(F), which allows energy objectives to be specified in either energy use or energy cost terms.

S. Rep. 100-6, at 5. Plaintiffs make no showing that Washington's energy code is based on energy "costs," like Oregon, and not energy "use." Further, factor (C) provides that credits be given "on a one-for-one equivalent energy use or equivalent cost basis." The use of the term "or," indicates that a code may be based on energy use, as here, or on the "equivalent cost basis." Washington's code has met this requirement.

             3.    <u>Factor (E): If the Code Contains Options that Using Products that Exceed Federal Standards, Code Must Provide an Equal Number of Options that Don't Require Products that Exceed Federal Standards</u>

Under Factor (E):

If the code sets forth one or more optional combinations of items which meet the energy consumption or conservation objective, for every combination which includes a covered product the efficiency of which exceeds either standard or level referred to in subparagraph (D), there also shall be at least one combination which includes such covered product the efficiency of which does not exceed such standard or level by more than 5 percent, except that at least one combination shall include such covered product the efficiency of which meets but does not exceed such standard.

42 U.S.C. § 6297 (f)(3)(E).

      The Washington Code meets the requirements of Factor (E). There are at least as many options which do not require the use of products which exceed federal standards as there are options that require use of products exceeding federal standards. Of the thirteen options, only four require use of products which exceed federal standards. (Options 1a, 2, 5a and 5b). Despite Plaintiffs' claim, Option 5a requires use of a covered product that does not exceed federal standards by more than 5%. Option 5a, "Efficient Water Heating," is worth one half a point, and provides:

Water heating system shall include one of the following: Gas, propane or oil water heater with a minimum EF of 0.62.
Or

electric water heater with a minimum EF of 0.93
And for both cases
All showerhead and kitchen sink faucets installed in the house shall be rated at
1.75 GPM or less.  All other lavatory faucets shall be rated at 1.0 GPM or less.

On December 22, 2010, after these motions were filed, the U.S. Department of Energy issued a

waiver of federal preemption for state regulations concerning the efficiency of showerheads,

faucets, water closets and urinals.  75 Fed. Reg. 802898 (December 10, 2010).  After the

December 22, 2010, change in federal regulations regarding these items, the second portion of

this Option is no longer subject to preemption.  As to the first portion of Option 5a, Plaintiffs

argue that for the most popular size of electric water heater (50 gallons), the standard energy

factor ("EF") is .88 and the most popular gas water heater's (40 gallons) standard EF is .54.  Dkt.

54, at5- 6.  Plaintiffs fail to establish how they arrived at their numbers.  Defendants point to the

equation found in the federal register.  Dkt. 48-9, at 19 (*citing* 66 Fed. Reg. 4497 (January 17,

2001)).  Using Plaintiffs' assertion of the most popular water heaters and the formula required by

the federal government, Defendants convincingly show that the EF for a 50 gallon electric water

is a minimum of .904, and for a 40 gallon gas water heater is .594.  Chapter 9's Option 5a,

requiring use of a electric water heater with and EF of .93 and a gas heater with an EF of .62,

includes covered products "the efficiency of which does not exceed such standard or level by

more than 5 percent."  Option 5a could be combined with Option 4a, for example, to acquire the

credit needed.          Plaintiffs argue that even if Chapter 9 contains a number of options that do

not require use of covered products, Chapter 9 "functionally" or "effectively" requires use of

covered products exceeding federal efficiency standards because the cost of those options is so

high.  Dkt. 54.

The text of the exemption provision does not include the terms "functionally" or "effectively"

require.  Plaintiffs point to a portion of the Congressional record which provides that

"performance-based codes cannot expressly or effectively require the installation of covered

products."  Dkt. 54, at 2 (*citing* H.R. Rep. 100-11, at 26).  Plaintiffs allegations, without more, are

insufficient to show that the Code "functionally" or "effectively" requires use of products that

exceed federal efficiency standards.  EPCA does not require that the various options provided in

1   the state codes be financially cost equivalent to the builder.  Plaintiffs argument as to this factor

2   are again problematic due to the fact that they are mounting a facial challenge to Chapter 9's

3   constitutionality.  Plaintiffs' hypotheticals are insufficient to carry their burden.

4             4.   <u>Factor (F):  In Order to Not be Preempted, Objective is Specified in Terms</u>
                  <u>of Estimated Total Consumption of Energy Using An Equivalent Amount</u>

5                     <u>of Energy</u>

6         Factor (F) provides, "[t]he energy consumption or conservation objective is specified in

7   terms of an estimated total consumption of energy (which may be calculated from energy loss- or

8   gain-based codes) utilizing an equivalent amount of energy (which may be specified in units of

9   energy or its equivalent cost)."  42 U.S.C. § 6297 (f)(3)(F).

10        Plaintiffs' motion for summary judgment on factor (F) should be denied, and Defendants'

11  motion on this factor should be granted.  Plaintiffs argue that Chapter 9 "measures performance

12  based not on the total consumption but on an inconsistent point system that fails to directly relate

13  to energy savings."  Dkt. 54, at 22.  Plaintiffs note that their arguments regarding factor (C) apply.

14  *Id.*  As was the case in the factor (C) analysis above, Plaintiffs have failed to carry their burden.

15  They have not established, by competent evidence, that Chapter 9's objective is not "specified in

16  terms of an estimated total consumption of energy . . . utilizing an equivalent amount of energy."

17  Dkt. 54.  Defendants have established that Chapter 9's objectives are specified in total

18  consumption of energy using an "equivalent amount of energy," as stated in their arguments

19  related to factor (C).

20      **D.   COMMERCE CLAUSE CLAIM**

21        Defendants move for dismissal of Plaintiffs claim that Chapter 9 violates the commerce

22  clause of the U.S. Constitution.  Dkt. 48.  Plaintiffs do not meaningfully dispute the motion for

23  dismissal of this claim.  Defendants' motion on Plaintiffs' commerce clause claim should be

24  granted and the claim dismissed.

25      **E.   CONCLUSION**

26        Plaintiffs have failed to carry their burden and their motion for summary judgment (Dkt.

27  54) should be denied.  Defendants have shown that Chapter 9 meets EPCA's preemption

28

1  exemption test.  Defendants' motion for summary judgment (Dkt. 48) should be granted and

2  Plaintiffs' claims should be dismissed.

3                                   **III.   ORDER**

4            Therefore, it is hereby, **ORDERED** that:

5  •        Washington State Building Code Council, NW Energy Coalition, Sierra Club, Washington

6           Environmental Council, Natural Resources Defense Council's Joint Motion for Summary

7           Judgment (Dkt. 48) is **GRANTED**;

8  •        Plaintiffs' Motion for Summary Judgment (Dkt. 54) is **DENIED.**

9  •        Plaintiffs' claims are **DISMISSED**.

10           The Clerk of the Court is instructed to send uncertified copies of this Order to all counsel

11  of record and to any party appearing *pro se* at said party's last known address.

12           DATED this 7th day of February, 2011.

13

14

15           Robert J Bryan
             United States District Judge

16

17

18

19

20

21

22

23

24

25

26

27

28

ORDER
Page 23